**Donald YARBROUGH,
Plaintiff-Appellee,**

v.

**TOWER OLDSMOBILE, INC., and Neil Burgess, Defendants-Appellants.**

No. 85–1278.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1985.
Decided April 23, 1986.

Gregory A. Stayart, Romanyak & Miller, Chicago, Ill., for plaintiff-appellee.

Before EASTERBROOK, Circuit Judge, ESCHBACH, Senior Circuit Judge, and GRANT, Senior District Judge.*

ESCHBACH, Senior Circuit Judge.

The plaintiff brought suit under 42 U.S.C. § 1981, alleging that he was discharged from his employment on the basis of his race. The jury returned a verdict in his favor and awarded compensatory and punitive damages. The defendants moved for judgment notwithstanding the verdict, which the district court denied. The primary questions presented upon appeal are whether (1) the plaintiff established a prima facie case of discrimination, (2) the defendants offered a credible nondiscriminatory explanation for the discharge, and (3) the evidence supports the award of punitive damages. For the reasons stated below, we will affirm.

I

The plaintiff, Donald Yarbrough, is a black male and was employed as a journeyman mechanic by the defendant, Tower Oldsmobile ("Tower"), from June 23, 1978, until December 2, 1981.[1] In his complaint, Yarbrough alleged that he was initially assigned to a work area near the front of the service department at Tower, and that he had experienced no difficulties with the then service manager. In September of 1978, defendant Burgess assumed the position of service manager. In July of 1980, Burgess hired two white male mechanics, who had been former colleagues of his at another automotive service department.

In his complaint, Yarbrough alleged that Burgess assigned him more difficult and less lucrative work than the other mechanics. He alleged further that Burgess was unresponsive to his complaints about these work assignments. Yarbrough also al-

Lawrence M. Cohen, Fox & Grove, Chtd., Chicago, Ill., for defendants-appellants.

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

1. According to trial testimony, a "journeyman mechanic" is the designation for the highest rank in the automotive repair trade. A journeyman mechanic is responsible for all types of major automotive repair and service work.

leged that, immediately after he hired the two white mechanics, Burgess moved Yarbrough to a inferior stall area in the rear of the service department. Yarbrough claimed that, immediately prior to this reassignment, he had overheard Burgess say to another employee at Tower: "We don't want no black guy in the front of the shop."

The friction between Burgess and Yarbrough mounted. In October 1980, for example, Burgess issued Yarbrough a written reprimand, accusing him of refusing to work on a particular car. Yarbrough contended, and at trial introduced evidence to the effect that, he had not refused to work on it, and that the automobile was assigned to another mechanic. Burgess also accused Yarbrough of drilling a hole in a work bench in order to secure a chair to it. Yarbrough maintained that another mechanic had drilled the hole well before Yarbrough was moved to the work area. In February 1981, Burgess again reprimanded Yarbrough, this time for failing to come to work on schedule. Yarbrough claimed that he had told Burgess a week earlier that he had a court appearance that day, and would be late.

Ultimately, on December 2, 1981, an incident occurred that led to Yarbrough's termination. Not surprisingly, the factual circumstances surrounding this incident are disputed. Both parties agree that Burgess requested Yarbrough to replace a part on an automobile. The automobile had been disassembled and was located in the body shop some distance from Yarbrough's work area. Yarbrough testified that, because the automobile had been in a collision, he advised Burgess to raise it on a hydraulic lift in order to determine whether more extensive damage might exist. Yarbrough claims that he was willing, nonetheless, to commence the repair work, whether or not the automobile was first placed on a lift. As Burgess tells the story, Yarbrough refused to perform the repair, unless and until the automobile was moved to the lift. Burgess then discharged Yarbrough on the ground that he had refused a work assignment. Yarbrough's refusal, Burgess claims, constituted insubordination in violation of the collective bargaining agreement between Tower and Yarbrough's union.

On December 14, 1982, Yarbrough brought suit against Tower and Burgess pursuant to 42 U.S.C. § 1981.[2] The jury returned a verdict against both defendants on liability and, following a hearing on damages, awarded Yarbrough $29,500.00 in compensatory and $7,500 in punitive damages, with $5,000 of the $7,500 assessed against Tower and $2,500 against Burgess. Tower and Burgess moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied both motions. This appeal followed.[3]

II

On appeal, the defendants argue that (1) Yarbrough did not establish a prima facie case of discrimination, (2) Yarbrough failed to adduce sufficient evidence that the legitimate, nondiscriminatory explanation they offered for his discharge was either a pretext or not credible in light of the testimony presented, and (3) the awards of punitive damages were unsupported by the evidence.

To prevail on his § 1981 claim, Yarbrough must demonstrate that he has been the victim of intentional discrimination. *See, e.g., Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); *Texas*

---

**2.** 42 U.S.C. § 1981 provides:
  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

penalties, taxes, licenses, and exactions of every kind, and to no other.

**3.** The defendants do not appeal from the denial of their alternative motions for a new trial, but rather only from the district court's denial of their motions for judgment notwithstanding the verdict.

*Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Christensen v. Equitable Life Assurance Society,* 767 F.2d 340, 343 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). The same standards governing liability under Title VII apply to § 1981 claims. *See, e.g., Ramsey v. American Filter Co.,* 772 F.2d 1303, 1307 (7th Cir. 1985); *Mason v. Continental Illinois National Bank,* 704 F.2d 361, 364 (7th Cir. 1983); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281 n. 3 (7th Cir.1977). A plaintiff may establish a prima facie case of intentional discrimination by offering evidence adequate to raise an inference that he was discharged on the basis of his race. *Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094; *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Ustrak v. Fairman,* 781 F.2d 573, 576 (7th Cir.1986); *Mason,* 704 F.2d at 365. A plaintiff may accomplish this by showing that (1) he belongs to a racial minority, (2) he was doing his job well enough to meet his employer's legitimate expectations,[4] (3) in spite of his performance he was discharged, and (4) the employer sought a replacement for him. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984); *see Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799.

Once these facts are established, the defendant must then produce evidence that the plaintiff was discharged for "a legitimate, non-discriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *see also Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799. Once the employer does so, the presumption of discrimination "drops from the case," and the plaintiff bears the burden of persuading the trier of fact that the explanation offered by the defendant is pretextual. *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *see also Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799; *Tulloss v. Near North Montessori School,* 776 F.2d 150, 155 (7th Cir.1985). This he may do by showing either that a discriminatory reason more likely motivated the employer, or that the employer's explanation is not worthy of belief. *See Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799; *United States Postal Service Board of Governors v. Aiken,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95; *La Montagne,* 750 F.2d at 1409. That is, "in the final analysis the trier of fact 'must decide which party's explanation of the employer's motivation it believes.'" 750 F.2d at 1409 (quoting *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482).

## A. PRIMA FACIE CASE

Tower argues that Yarbrough did not establish a prima facie case of discriminatory discharge because (1) he failed to show that similarly situated white employees were more favorably treated than himself, and (2) his refusal to work on a particular automobile as directed proved that he did not meet Tower's legitimate work expectations.[5] We disagree with Tower's analysis and conclusions.

---

**4.** As we recently noted in *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 n. 2 (7th Cir.1984):

[T]he test [for establishing a prima facie case] was originally formulated in *McDonnell Douglas,* [and] the second factor was that the plaintiff was qualified for the job. This is more appropriate to a case of discriminatory hiring, as *McDonnell Douglas* was, than to discriminatory discharge. When an employee of long standing is discharged, the more appropriate concern would appear to be his job performance, into which the question of his qualification might be seen to merge.... It is clear that the *McDonnell Douglas* test is flexible and may be adapted to the fact situation as appropriate. *See McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

**5.** In its motions for directed verdict and for judgment notwithstanding the verdict, Tower argued that Yarbrough also failed to establish a prima facie case because he did not show a replacement for him was sought or found. At trial, Yarbrough and another witness testified that a mechanic had been hired to replace him. The defendants testified that this was not true. In reviewing a motion for judgment notwith-

■ Tower's first argument, that Yarbrough failed to present evidence that similarly situated white employees were more favorably treated than himself, either mischaracterizes Yarbrough's claim or overlooks the assignment of burdens of proof in a discriminatory discharge suit. In either event, it is not well taken. Yarbrough has alleged "one instance of discrimination," *Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799, *viz.,* his discharge from employment. His claim is not, then, predicated on a practice or pattern of discrimination, *see e.g., Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Ramsey,* 772 F.2d 1307–09, where "[p]roving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case." *Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799; *see also Teamsters v. United States,* 431 U.S. 324, 336–38, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977). It is, therefore, not necessary that Yarbrough present evidence that similarly situated white employees were treated more favorably than himself. Insofar as it is arguing that Yarbrough must demonstrate that white employees who refused a work assignment were not discharged for their conduct, Tower is not challenging the sufficiency of Yarbrough's prima facie case, but is, rather, indirectly offering an explanation for terminating Yarbrough's employment. This we shall consider below.

■ Tower argues that, by refusing a work assignment, Yarbrough did not meet his employer's legitimate job expectations, and hence, necessarily failed to establish a prima facie case of discrimination. Tower's argument overlooks the role of establishing a prima facie case in the sequence of proof involved in a discriminatory dis-

charge case. Proof of a prima facie case does no more than entitle the plaintiff to an inference of discrimination; it is not equivalent to a factual finding to that effect. *See, e.g., Furnco,* 438 U.S. at 579, 98 S.Ct. at 2943. Yarbrough's testimony that the general quality of his work was satisfactory is sufficient to establish that he met the legitimate expectations of his employer. *La Montagne,* 750 F.2d at 1413–14, and hence, to satisfy that element of the prima facie case. The burden then shifted to Tower to rebut the inference of discrimination by articulating a legitimate, nondiscriminatory explanation for discharging Yarbrough. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *see also Cooper,* 467 U.S. at ——, 104 S.Ct. at 2799. Such an explanation is not, however, appropriately brought as a challenge to the sufficiency of Yarbrough's prima facie case.

## B. THE DEFENDANTS' REBUTTAL

■ We turn now to the question of the sufficiency of the defendants' explanation for discharging Yarbrough. In assessing that explanation and the evidence Yarbrough adduced to counter it, we must be mindful that the defendants are appealing from the denial of a motion for judgment notwithstanding the verdict. The standard for reviewing the denial of such a motion is whether substantial evidence supports the verdict. *See, e.g., Christie v. Foremost Insurance Co.,* 785 F.2d 584, 585 (7th Cir. Mar. 6, 1986); *Ramsey,* 772 F.2d at 1307; *La Montagne,* 750 F.2d at 1410. More particularly, we must determine whether the evidence presented, viewed in the light most favorable to the nonmovant, and combined with all reasonable inferences that may be drawn from it, is sufficient to sup-

standing the verdict or for directed verdict, we, of course, resolve conflicts in the evidence in the non-movant's favor. *See, e.g., La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984).

There is, however, no need for us to consider the issue whether Yarbrough established that Tower either sought or found a replacement for him, because Tower failed to raise this issue on appeal. *See, e.g., Graczyk v. United Steel Workers,* 763 F.2d 256, 260–61 n. 6 (7th Cir.), *cert.*

*denied,* —— U.S. ——, 106 S.Ct. 335, 88 L.Ed.2d 319 (1985). It is true that, in its statement of facts, Tower claims that no one was hired to replace Yarbrough, but it did not present any legal arguments to this court on that point. As we observed in *Graczyk,* "[a] party's description of the factual circumstances of a dispute does not impose on the reviewing tribunal an obligation to divine from that recitation all possible legal issues and to resolve those issues." *Id.*

port the verdict. *Christie,* 785 F.2d at 585–86; *La Montagne,* 750 F.2d at 1410; *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 153 (7th Cir.1981). Any conflicts in the evidence are resolved in favor of the prevailing party. *La Montagne,* 750 F.2d at 1410; *Syvock,* 665 F.2d at 153. We do not, of course, judge the credibility of witnesses, *see Freeman v. Franzen,* 695 F.2d 485, 489 (7th Cir.1982), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983), and we do not reweigh the evidence as would a jury to find a preponderance on one side or the other. *La Montagne,* 750 F.2d at 1410. "We do, however, weigh the evidence to the extent of determining whether the evidence to support the verdict is *substantial;* a mere scintilla of evidence will not suffice." *Id.* (emphasis in original); *see also Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

Tower contends that it dismissed Yarbrough because he refused to work on a particular automobile on December 2, 1981, and that this refusal constituted insubordination under the terms of the collective bargaining agreement in effect between Tower and Yarbrough's union at the time of the discharge. There is no doubt that, if true, this would constitute a legitimate, nondiscriminatory explanation for discharging Yarbrough. *See Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95. As we noted above, the defendants' burden is only one of production; the burden of persuasion rests at all times on Yarbrough. *Id.*

The question thus arises whether Yarbrough introduced sufficient evidence to support the jury's finding that the defendants' explanation was either pretextual or not worthy of credence. *See, e.g., Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95; *La Montagne,* 750 F.2d at 1409. We acknowledge that this is a close question. Yet, as we noted above, our standard of review is deferential to a jury's verdict. *See, e.g., Christie,* 785 F.2d at 586; *La Montagne,* 750 F.2d at 1410. An employment discrimination case, such as this, involves sensitive and difficult issues of fact

concerning the presence of discriminatory motives. *See Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482; *Christie,* 785 F.2d at 586. Thus, the credibility of witnesses is often decisive. *Christie,* 785 F.2d at 586; *see also La Montagne,* 750 F.2d at 1410. Bearing this in mind, and drawing all reasonable inferences from the evidence in Yarbrough's favor, we find that he presented evidence sufficient to support the jury's conclusion that the defendants' explanation for discharging him was not worthy of credence.

The defendants contend that Yarbrough refused a work assignment. Yarbrough claims that he did not. As Yarbrough relates the events surrounding the dispute, he had been working on another automobile, the owner of which was waiting on the premises at Tower for the repair to be completed. Shop custom gave priority to such a work order. He was then approached by Burgess who told him that replacement parts for another automobile, located in the body shop, had arrived. Burgess asked Yarbrough to accompany him to the automobile, which Yarbrough did. Burgess then instructed Yarbrough to replace a certain part on the automobile. Yarbrough told Burgess that he would effect the repairs as the car stood, but that it might be better to move it to a hydraulic hoist in order to inspect it for more damage. Burgess replied that he did not want the car moved, and told Yarbrough once again to replace the part. Burgess then walked away, saying no more. Yarbrough returned to work on the automobile in his stall, because it had priority. Burgess shortly reappeared and told Yarbrough he was fired for refusing the work assignment on the other automobile.

Burgess tells an altogether different story. He and the body shop foreman both testified that Yarbrough had refused to work on the automobile, unless and until it were moved to a hoist. They also testified that, on the same day, Yarbrough had admitted to union representatives that he had refused to perform the work in the manner it was assigned. One of the union repre-

sentatives corroborated this testimony. He stated that Yarbrough had only subsequently refuted that admission, and changed his version of the facts to that presented at trial.

Distilled to its essence, this case is a swearing contest. The court instructed the jury that Yarbrough must prove the defendants intentionally discriminated against him based on his race, and that he could do so by demonstrating that the explanation the defendants offered for discharging him was unworthy of belief.[6] It is apparent that the jury found Yarbrough's account of the facts credible, and discredited the defendants'. On the record before us, we cannot say that the jury was unreasonable in doing so, or that their conclusion was not supported by substantial evidence. Hence, we hold that the district court properly denied the defendant's motions for judgment notwithstanding the verdict and for a directed verdict.

### C. PUNITIVE DAMAGES

■ The defendants argue that the award of punitive damages was unsupported by the evidence. It is, of course, true that a finding of liability does not of itself entitle a plaintiff to an award of punitive damages. *Ramsey*, 772 F.2d at 1314. It is, nonetheless, well settled that a plaintiff who establishes a cause of action under § 1981 may recover punitive damages under proper circumstances. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). The purpose of awarding punitive damages is to "punish a wrongdoer for his outrageous conduct and to deter others from engaging in similar conduct." *Id.* Such an award must be supported by the record, and may not constitute merely a windfall for the plaintiff. *Id.; Rodgers v. General Motors Corp.*, 739 F.2d 1102, 1109 (6th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985); *McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir.1984).

The Supreme Court in *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), set forth the standard for punitive damages in a § 1983 claim: "[A] jury may be permitted to assess punitive damages ... when the defendant's conduct is shown to be motivated by evil motive or intent, or it involves reckless or callous indifference to the federally protected rights of others." This is equally applicable to a suit brought under § 1981. *See Ramsey*, 772 F.2d at 1314; *Rodgers*, 739 F.2d at 1109; *see also Smith v. Wade*, 461 U.S. at 48–49, 103 S.Ct. at 1636. As we noted in *McKinley*, "[t]he jury must also ... make the discretionary moral judgment that punishment or deterrence would be served by an award of punitive damages." *McKinley*, 732 F.2d at 1326.

We recognize that this is a close case for an award of punitive damages. Nonetheless, the record does disclose some evidence of the defendants' ill will against the plaintiff, or callous indifference to his federally protected rights. Yarbrough testified that he was reprimanded in writing on three occasions by Burgess, and that these reprimands were totally unfounded. He testified further that Burgess, after allegedly telling another employee at Tower that "[w]e don't want no black guy in the front of the shop," had moved Yarbrough to an inferior work area in the rear of the service department. Yarbrough also testified that Burgess unfairly assigned him, but not the other, white mechanics, time-consuming and less lucrative work.

According to his testimony, Yarbrough also brought his complaints to the owners of Tower, Edward and Harry Levin. They were unresponsive. When Yarbrough related to them the circumstances surrounding his discharge and the manner in which Burgess assigned work to him, Edward Levin walked away without comment, and Harry Levin, replied "that was wrong and [Burgess] should not have done that but I cannot get involved.... That is my manager. I can't get involved."

---

**6.** The defendants did not object to this instruc-      tion.

The jury found Yarbrough's testimony credible, and we cannot say that they were unreasonable in doing so. It could also reasonably be inferred from this testimony that Burgess harbored a racial animus against Yarbrough, and that the owners of Tower were callously indifferent to his federally protected rights. We, therefore, hold that the award of punitive damages against both defendants was supported by the evidence.

## III

For the reasons stated above, the judgment of the district court is

AFFIRMED.