Nazarine **MACKEY**, Plaintiff,

v.

**WHITEHALL LABORATORIES, INC.,** Defendant.

No. S 84–556.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 8, 1987.

Nazarine Mackey, pro se.

Chris J. Trebatoski, Toni L. Bonney, Milwaukee, Wis., Martin W. Kus, LaPorte, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The plaintiff, Nazarine Mackey, *pro se,* filed this case against the defendant, Whitehall Laboratories, on May 16, 1984, in the Eastern District of Wisconsin. The complaint invoked federal jurisdiction under Section 1331 of Title 28 of the United States Code, premised upon Section 2000e of Title 42 of the United States Code. The case was transferred to the Northern District of Indiana on August 28, 1984. Subsequently, the court granted the plaintiff's request and appointed counsel to represent the plaintiff.

*Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) requires both patience and tolerance. In this specific context two comments are appropriate. This plaintiff's criticism of Aladean M. De-Rose is unkind and unfair. Few lawyers in this judge's tenure have demonstrated greater fidelity and competence in representing persons alleging racial and sexual discrimination.

The second comment relates to the plaintiff's effort to put before this court for the first time in a post-trial brief, letters between counsel in regard to settlement negotiations. Such an attempt is contrary to

Rule 408 of the Federal Rules of Evidence. If a lawyer were to attempt such a tactic, sanctions under Rule 11 of the Federal Rules of Civil Procedure would be in order. Since this plaintiff is *pro se*, no sanctions will be imposed. The proffered correspondence is irrelevant and not considered in the final decision of this case. It is wholly inappropriate for even a *pro se* plaintiff to attempt such an *ex parte* admission of exhibits on a forbidden subject.

The defendant filed motions for summary judgment and dismissal on April 15, 1985 and May 1, 1985 respectively. A pretrial conference was held on May 3, 1985 before the Honorable Gene B. Lee, United States Magistrate. A *Lewis v. Faulkner*, 689 F.2d 100 (1982) notice was filed on August 7, 1985. In addition the court conducted another pretrial conference on January 23, 1986 at which the plaintiff was represented by counsel.

On July 2, 1986 the court granted the plaintiff counsel's Verified Motion for Leave to Withdraw Appearance. Ms. DeRose stated that there were "irreconcilable differences concerning the merits of plaintiff's claims" and that the plaintiff had "not provided counsel with sources for evidence which [the plaintiff] asserts are supportive of her claim." The plaintiff, subsequently, requested another court-appointed counsel. The plaintiff stated "I would prefer a Black attorney if it is at all possible. Ms. DeRose was never on my side even from day one. Because she is white and has never experienced 'subtle racism', I could never get her to understand my point." The court then attempted to find an attorney who corresponded to the plaintiff's request. The case was submitted to three local lawyers who met the plaintiff's request and could have taken the case but declined. Although there are two other attorneys in South Bend who met the plaintiff's request they were unavailable for reasons unrelated to this lawsuit. In declining to appoint a second counsel to represent the plaintiff, this court has strictly upheld the guidelines of *Darden v. Illinois Bell Telephone Co.*, 797 F.2d 497 (7th Cir. 1986) and *Jones v. WFYR Radio/RKO General*, 626 F.2d 576 (7th Cir.1980).

A trial to the court without a jury was conducted on November 3, 1986. Each side was given the opportunity to present evidence, and the court ordered the parties to file and exchange briefs by December 1, 1986. The plaintiff and defendant filed supplemental materials on November 28, 1986. This case is ripe for decision and the court now makes findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## II.

In July, 1863 Abraham Lincoln wrote to an Ohio doctor turned Major General, James G. Blunt: "I regret to find you denouncing so many persons as liars, scoundrels, fools, thieves, and persecutors of yourself." Kenneth P. Williams, *Lincoln Finds a General*, Vol. V, 106 (1959). The record in this case is replete with widely scattered accusations no less stinging or biting than those made by General Blunt in regard to the military administration of the Department of Kansas during this nation's Civil War. If these accusations bore any relevance to a charge of racial discrimination under Title VII of the Civil Rights Act of 1964, they would be tolerable and maybe convincing, but since these accusations do not rise to the level of *prima facie* proof of such a claim, they are neither helpful to this plaintiff nor to this court.

The facts before the court stretch back to 1971. In 1971 the plaintiff successfully secured a position with the defendant in the mail room. There were absolutely no problems which accompanied that employment. The plaintiff left that job to resume her college education. Both parties admit that at that time had the plaintiff chosen to stay on as a "permanent" employee that she would have been welcome. However, the plaintiff left and completed her education receiving a B.A. in Sociology in 1973 and an M.A. in Sociology in 1975. The plaintiff's employment record from 1971 to 1982 includes work for the State of Wisconsin, Wisconsin Family, Inc., and the Elkhart Urban League; since 1983 it includes

Telog, McDonald's and some temporary help services through an agency.

The plaintiff went to the defendant's office to apply for a job. There were approximately 100 people of various races who applied for five (5) available jobs. Due to her previous employment with the defendant and her qualifications, the plaintiff was selected as a 30 day probationary employee. Under the collective bargaining agreement in force in 1983 a probationary employee was "all other employees who have not completed twenty-six (26) days' work with the Company. During such period they shall not have seniority rights, but upon completion of the accumulated probationary period, they shall become regular employees." Although the plaintiff insisted on characterizing her employment as "permanent" from the date of hire, she understood that she had to complete a probationary period. During the probationary period the various supervisors evaluate the employee's progress. The evaluation includes: Ability to understand; Ability to work with others; Attendance, Attitude, Follows directions; Work performance and habits. Between the plaintiff's January 7, 1983 employment date and January 27, 1983 termination date three written evaluations were completed. The two supervisors responsible for those evaluations testified at trial. The evaluations were based upon personal observations, some discussion with other workers and a personal review at the end of each week. Both supervisors had over six (6) years experience as a supervisor for the defendant. Both supervisors knew the training methods utilized by the defendant and believe that those methods have been and continue to be a successful training and evaluation method. The training method has been termed a "hands on" method, and it requires that the trainee physically participate in the job for which she is being trained. The plaintiff at trial and in her deposition admitted that when asked she refused to participate in the "hands on" learning because she preferred to learn by observation first.

Both supervisors testified that the jobs for which the plaintiff was being trained required not merely good communication skills but the ability to use those skills to communicate effectively to the workers on the line. It is clear from the record that the supervisors believed that the plaintiff was not developing the comradery which was an integral part of learning the job for which the plaintiff was being trained. Further, the supervisors determined that the plaintiff was unable to communicate with the other members of the production team. In addition it was determined that the plaintiff was not adapting to the defendant's training methodology. The defendant's supervisors determined that the plaintiff did not take a strong enough interest in her training program. Specifically, the plaintiff was observed sitting and writing notes twenty (20) feet away from where her trainer was performing the job the plaintiff was supposed to be learning, and in her deposition the plaintiff admitted observing one trainer sort pills for defective ones from behind a door.

The plaintiff alleges that the statements of the supervisors are lies and fabrications, but she did not present any evidence to support her accusations.

III.

Under Title VII, a plaintiff alleging discriminatory discharge must carry an initial burden of establishing by a preponderance of the evidence a *prima facie* case. *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *accord, Morgan v. South Bend Community School Corp.,* 797 F.2d 471 (7th Cir.1986); *Griffin v. Board of Regents of Regency Univ.,* 795 F.2d 1281 (7th Cir. 1986); *Regner v. City of Chicago,* 789 F.2d 534 (7th Cir.1986); *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405 (7th Cir.1984); *Minority Police Officers Ass'n v. City of South Bend,* 617 F.Supp. 1330, 1339 (N.D.Ind.1986), aff'd, 801 F.2d 964 (7th Cir.1986). A *prima facie* case may be established by proving (1) that

she belongs to a racial minority; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Elements 2 and 3 were reworded by the Seventh Circuit Court of Appeals to read: "(2) [she] was doing [her] job well enough to meet [her] employer's legitimate expectations; and (3) in spite of [her] performance [she] was discharged." *LaMontagne,* 750 F.2d at 1409. In this case, the plaintiff had been hired as a probationary employee, and must be analyzed under the discriminatory discharge language.

Once the plaintiff has established a *prima facie* case by a preponderance of the evidence, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's" discharge. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. If the defendant articulates a nondiscriminatory reason "the presumption of discrimination 'drops from the case'," and the burden again shifts to the plaintiff to prove by a preponderance that the reasons offered by the defendant were a pretext for discrimination. *Id.,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Cooper,* 104 S.Ct. at 2799. However, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, *accord Cooper,* 104 S.Ct. at 2799.

The plaintiff is a member of the black race which fulfills the first element of the *prima facie* case. The second element is whether the plaintiff "was doing her job well enough to meet the legitimate expectations of her employer." *LaMontagne,* 750 F.2d at 1409. The uncontradicted evidence demonstrates that the defendant employer's legitimate expectations included participating in the defendant's method of training, and developing a relationship with fellow workers which would facilitate effective communication between the plaintiff and her co-workers or subordinates. The unrefuted evidence is that the plaintiff did not participate, and at times refused to participate, in the defendant's training method because she preferred to learn a job by observing and taking notes, and she was not developing the type of relationship with her co-workers or subordinates which would facilitate effective communications. It is clear from the record in this case, that the plaintiff failed to meet the legitimate expectations of the defendant. Therefore the plaintiff has failed to present a *prima facie* case.

In *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508 (7th Cir.1986), the Seventh Circuit Court of Appeals held that a plaintiff met a *prima facie* case by his "testimony that the general quality of his work was satisfactory is sufficient to establish that he met the legitimate expectations of his employer." *Id.,* at 512. Although in isolation that statement lessens the plaintiff's burden when read in light of *McDonnell Douglas, Burdine,* and *Cooper,* the plaintiff's burden remains to prove the *prima facie* case by a preponderance of evidence. The plaintiff has not carried her burden to prove a *prima facie* case by a preponderance of the evidence.

This court is well aware that it takes more than "a hunch" that discrimination exists. *See Andre v. The Bendix Corp.,* 774 F.2d 786 (7th Cir.1985). In this case no such "hunch" exists. The plaintiff has simply failed to prove racial discrimination and she has been given a most liberal opportunity to do so.

One must have great respect for the personal and educational accomplishments of this plaintiff. Accompanying a deeper knowledge of the historical discrimination against her race has sprung an intense animosity against all who cross her path. As understandable as this may be it does not provide the necessary factual basis for a Title VII claim.

Accordingly, and for all the above reasons, it is the decision of the Court that judgment be entered for the defendant, Whitehall Laboratories, and against the plaintiff, Nazarine Mackey. SO ORDERED. Costs assessed against the plaintiff.