Terence GATLIN, Plaintiff,

v.

JEWEL FOOD STORES, Defendant.

No. 88 C 761.

United States District Court,
N.D. Illinois, E.D.

Oct. 28, 1988.

Clara L. Larry, Chicago, Ill., for plaintiff.

Terrill E. Pierce, Kovar Nelson Brittain & Sledz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Terence Gatlin ("Gatlin") has sued his ex-employer Jewel Food Stores ("Jewel"), asserting:

    1.  a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and

    2.  a pendent state law claim for slander.

Jewel has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, its motion is denied as to the Section 1981 claim but granted on the slander count.

### Facts [1]

As is seldom the situation in a case tendered for summary consideration, the parties present two widely varying versions of

---

**1.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that pur-

pose this Court draws all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Gatlin (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)).

the facts.[2] That being true, the issue becomes whether one or more of those factual divergences is or are material—that is, outcome-determinative.

Not in dispute is the fact Gatlin, a black male, was hired by Jewel August 5, 1985 (Gatlin Mem. Ex. A). He worked as a clerk on the night crew (approximately 11 p.m. to 7 a.m.) in the Jewel store at 6505 West Diversey, Chicago (Gatlin Dep. 16–20).

In the morning hours of January 16, 1987 Jewel store manager Edward Konkel ("Konkel") conducted "surveillance" from the store's office. He used a pair of binoculars to look through a one-way mirror down onto the store floor (Konkel Aff. ¶¶ 4–5). From that point the stories diverge.

Konkel says he observed a number of work-rule violations during the morning, including his having seen:

1. Scott Smolik ("Smolik"), a white male, eat cashew nuts from the bulk food section without paying for them; and

2. Gatlin eat a piece of cheese (valued at $.50) from the deli counter without paying for it.

Konkel and Farm Stand Manager Mike Patrizi ("Patrizi") met with both Smolik and Gatlin at the conclusion of the night shift (*id.* ¶ 6). Konkel reported his findings to Store Manager Thomas Schnurstein ("Schnurstein") (*id.* ¶ 9; Schnurstein Aff. ¶ 6).

On January 20 Jewel's Security Supervisor Robert Rames ("Rames") conducted investigatory interviews with Gatlin and Smolik. Schnurstein and Larry Adkins ("Adkins"), Gatlin's co-worker and a fellow union member, observed the interview. Smolik admitted eating the nuts and signed a written statement (Rames Aff. ¶ 8 and attachment). Rames, Schnurstein and Adkins all say Gatlin orally admitted eating

the cheese, but he refused to sign a statement (*id.* ¶ 9; Schnurstein ¶ 9; Adkins Aff. ¶¶ 2–3). After the results of that meeting were relayed to Jewel's District Manager Reinhofer and Area Personnel Manager Nolan,[3] both Gatlin and Smolik were terminated.

Gatlin advances a different version. His story is that on the morning of January 16 he was approached by Mark Schuller ("Schuller"), a white co-worker. Schuller offered to share a package of chicken patties with Gatlin and told him the patties were in the oven (Gatlin Dep. 37–39; Gatlin Aff. ¶ 3, 5; Schuller Aff. 1–3). At the lunch break Gatlin left the stock aisle, walked through the deli doors to the oven and prepared his lunch (Gatlin Dep. 39–40; Gatlin Aff. ¶ 6). Gatlin then joined his co-workers in the lunchroom and ate his sandwich.

Gatlin says he and Schuller were then separately questioned by Konkel and Patrizi about the chicken patties. At Patrizi's request Schuller produced a receipt for the patties (Schuller Aff. ¶ 8; Gatlin Aff. ¶ 8).

During the interview with Gatlin, Konkel and Patrizi questioned him about the deli counter. Gatlin told the supervisors he was in the area to get the chicken patties (Gatlin Dep. 59–60). When Konkel asked for a receipt, Gatlin said Schuller had it (*id.* 61).

Konkel then accused Gatlin of eating the cheese. Gatlin replied "yeah, right." Gatlin now says he thought Konkel was joking and that his own remark was sarcastic (*id.* 62). Konkel then told Gatlin he was being taken off the work schedule (*id.* 63).

Gatlin reported to Jewel for the January 20 meeting. Gatlin again denied eating cheese. Finally, after repeated questioning

---

**2.** That variance is due in part to Gatlin's non-compliance with this District Court's General Rules. General Rule 12(e) requires a party moving for summary judgment to submit a statement of material facts as to which there are said to be no genuine issues. Jewel did that (in its "12(e) statement"). General Rule 12(f) then requires the nonmovant to respond by admitting or controverting each paragraph of the movant's statement. Gatlin did submit a General Rule 12(f) statement ("12(f) statement") but failed to respond to Jewel's 12(e) statement. Rather he submitted what he termed a "statement of specific facts showing that there are general [sic] issues for trial."

**3.** No first names for those two Jewel officials are provided by the parties.

Rames apparently said:[4]

> Look, I'm tired of this shit. I know you took the cheese because you people always do something like that. All you have to do is just sign this piece of paper, apologize and that is it.

(Gatlin Aff. ¶¶ 9–10). Rames and Schnurstein both deny that remark was made (Rames Aff. ¶ 1; Schnurstein Aff. ¶ 1).

### Section 1981 Claim

■ To prevail on his Section 1981 claim, Gatlin must show he was terminated because of his race (*Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 510 (7th Cir.1986)). In that respect (*id.* at 511) (citations omitted):

> The same standards governing liability under Title VII apply to § 1981 claims.

*Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 155 (7th Cir.1985) (citations omitted) teaches that although the familiar *McDonnell Douglas* formulation is "an orderly and efficient way to evaluate evidence of employment discrimination":

> [It] does not represent the only method by which a plaintiff may make out a claim of intentional discrimination nor was it "intended to be rigid, mechanized, or ritualistic" in application.... The ultimate question in any Title VII disparate treatment case is whether the action was founded in a discriminatory intent.

Here Gatlin need only "offer[ ] evidence adequate to raise an inference that he was discharged on the basis of his race" to establish a prima facie case of intentional discrimination (*Yarbrough*, 789 F.2d at 511).[5]

Gatlin has met that minimal threshold requirement not once but twice. Each avenue needs only brief exploration.

First, Rames' statement during the January 20 meeting that "you people always do something like that" raises an inference of discrimination. It is a permissible (though not the only possible) inference from that statement that Rames—the Jewel employee responsible for investigating alleged theft—believed blacks ("you people") always steal food. That would provide direct evidence of discriminatory intent. And given the involvement of Schnurstein—the store manager and Gatlin's immediate supervisor—in the Rames interview, and given what must for present purposes be treated as his failure to disavow Rames' statement, it is a permissible (though not the only possible) inference that the same bias infected his decision and thus ultimately that of Jewel itself.

■ True enough, both Rames and Schnurstein deny any such statement was made. But that simply creates a disputed fact issue—the very thing that defeats summary judgment. Its resolution turns on the credibility of witnesses—something not properly determined via summary judgment (*Hawkins v. Poole*, 779 F.2d 1267, 1269 (7th Cir.1985)).[6]

Even apart from that direct evidence, Jewel's inconsistent explanation for Gatlin's termination raises the spectre of pre-

---

4. Gatlin is unclear as to who made the statement. His 12(f) statement ¶ 14 says Schnurstein made the remark, while Gatlin Dep. 83 and Aff. ¶ 10 indicate Rames did so. This Court, looking to the record, assumes Rames made the statement.

5. It is easy to see why application of the traditional four-part prima facie case is inappropriate here. *Yarbrough*, 789 F.2d at 511 says an employee such as Gatlin may establish a prima facie case in those terms by showing (1) he belongs to a racial minority, (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) in spite of his performance he was discharged and (4) the employer sought a replacement for him. Jewel says Gatlin was fired for the unauthorized consumption of cheese, so Gatlin cannot meet the second

prong of the test. But clearly that alone need not bar him from using other evidence to establish discrimination (perhaps the most familiar example is one in which discipline or more serious adverse action is not administered on an even-handed basis, but it may also be shown independently that race was a motivating factor in the employer's action).

6. This is *not* a case such as *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984), where the views of lower-level people (here Rames and presumably Schnurstein) should not be attributed to the employer (here Jewel itself). They were directly involved in the investigation, and Jewel management relied on their observations in the decision to terminate Gatlin (cf. *Oxman v. WLS-TV*, 846 F.2d 448, 456–57 (7th Cir.1988)).

text. After Gatlin's termination he filed for unemployment benefits with the Illinois Department of Labor ("Department"). Jewel opposed his application, initially telling the claims adjudicator Gatlin had been fired for eating a stolen chicken sandwich (valued at $1.39) (Gatlin Mem. Ex. B, C). Gatlin won at that initial level.

During the appeal of the adjudicator's decision, Jewel changed its position, asserting Gatlin had been terminated for eating a piece of cheese. Perhaps unsurprisingly, the Hearing Referee based her decision to uphold the adjudicator on Jewel's inconsistent position (Gatlin Mem. Ex. C).

It is a permissible inference from Jewel's change in position that its purported reason (whichever it chooses) is pretextual—a cover for a prohibited discriminatory motive. At a minimum, the inconsistency provides additional evidence to that effect.

Jewel's Assistant General Counsel Ronald Mendes ("Mendes") explains that James Frick, Inc. ("Frick") is an agency Jewel employs to handle unemployment compensation protests. Mendes says any inconsistency is attributable to the agency, and he does not know how the agency acquired the "mistaken" information regarding the chicken sandwich (Mendes Aff. ¶ 1–4). But that does not help Jewel's case. Frick is Jewel's agent—it is Jewel's responsibility to explain the inconsistency. Jewel cannot merely pass the buck to Frick.[7]

In sum, Gatlin offers evidence adequate to raise an inference of racial discrimination. He denies eating the cheese (Gatlin Dep. 77, 135). He denies making an admission in the January 20 meeting (id. 135). Though he acknowledges saying "yeah, right" when faced with the accusation of theft on January 16, he explains that was said only sarcastically (id. 62, 135). And

Schuller corroborates at least a portion of Gatlin's story.

Hence Jewel's motion for summary judgment on the Section 1981 claim is denied. That claim must await trial.

*Slander Claim*

Count II asserts a state law slander claim for two allegedly defamatory statements made before the unemployment Hearing Referee. That claim stems from Jewel's already-described inconsistent accusations of Gatlin's dishonesty.

Jewel Mem. 13 admits it made the two statements, but says it did so during a quasi-judicial proceeding—the unemployment compensation hearing—so the statements are absolutely privileged. As *Thomas v. Petrulis*, 125 Ill.App.3d 415, 417, 80 Ill.Dec. 713, 715, 465 N.E.2d 1059, 1061 (2d Dist.1984) (citations omitted) put it:

> Statements made before quasi-judicial proceedings are absolutely privileged ... and such protection encompasses testimony given before administrative agencies or other governmental bodies when they are performing a judicial function.

Gatlin Mem. [8–9][8] agrees statements made during a quasi-judicial proceeding are thus privileged, but it says Department is not a quasi-judicial body.[9]

Gatlin is wrong. *Van Amerongen v. Chief Industries, Inc.*, 635 F.Supp. 1200, 1202 (N.D.Ill.1986) has persuasively rejected that very argument:

> The Department and its director are empowered in the course of determining qualification for unemployment benefits to issue subpoenas, hear witnesses under oath, order that depositions be taken, conduct hearings and make findings and determinations, subject to appeal. Ill. Rev.Stat. ch. 48, ¶¶ 450–530 (1985).

**7.** Like Rames' remark, Frick's inconsistency is attributable to Jewel. At this stage it is not known from what source Frick got its information. With reasonable pro-Gatlin inferences, the most likely source was the Jewel employees directly involved in the decision to terminate Gatlin. At least for current purposes, Frick's inconsistency must also be attributed to Jewel (see n. 6).

**8.** Gatlin's Memorandum has no page numbers. This Court has supplied the relevant numbers.

**9.** To be precise, Gatlin's unemployment claim was filed in the Bureau of Employment Security, a division of the Department of Labor. Illinois statutes refer to the Department of Employment Security because P.A. 83–1503 has substituted references to that Department for references to the Department of Labor (see Historical Note to Ill.Rev.Stat. ch. 48, ¶ 311 (Smith–Hurd, 1988)).

These powers characterize the quasi-judicial functions of an administrative agency whose proceedings are ordinarily cloaked with the privilege against liability for defamatory statements. *Parker v. Kirkland*, 298 Ill.App. 340, 18 N.E.2d 709, 713 (1st Dist.1939).

Like its colleague Judge Marvin Aspen in that case, this Court agrees Department is a quasi-judicial body under Illinois law.[10] And because Jewel's statements were made in the course of Department's evidence-gathering process and were pertinent to the proceeding, those statements are absolutely privileged against Gatlin's slander claim.[11]

### Conclusion

Gatlin has offered sufficient evidence to raise an inference that he was discharged on the basis of race. Jewel has thus failed to establish the lack of a genuine issue of material fact on the Section 1981 claim. Its motion for summary judgment on that claim is denied.

However, Jewel's alleged statements before Department are absolutely privileged. There is no genuine issue of material fact on the slander claim, so Jewel is entitled to a judgment as a matter of law in that regard. That claim is dismissed.

---

**10.** See also *Thomas*, 125 Ill.App.3d at 419–20, 80 Ill.Dec. at 716, 465 N.E.2d at 1062 (citations omitted), holding that the EEOC is quasi-judicial and (quoting *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex.Civ.App.1982)) outlining six powers "differentiating a quasi-judicial body from that performing merely an administrative function":

> 1) [T]he power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of the issues on a hearing; and 6) the power to enforce decisions or impose penalties.

Gatlin Mem. 9 admits Department "has some of the powers enumerated above," and that admis-

sion must be viewed as a euphemism for *all* the enumerated powers.

**11.** Gatlin's Amended Response to Jewel's Interrogatory No. 5 (Jewel Mem. Ex. B) says that during the January 20 interview:

> [T]he office door was opened and other employees, sitting in the hallway overheard as Mr. Snurstein [sic], repeatedly and falsely accused Plaintiff of taking food without proof of purchase.

Gatlin Mem. 9 then urges that any absolute privilege would not extend to those statements. But Gatlin provides absolutely *no* evidentiary basis for his hearsay assertion that other employees overheard such statements. Consequently that argument is without merit in the context of a summary judgment motion (which demands admissible evidence, Rule 56(e)), and this Court need not address Jewel's preemption argument (Jewel Mem. 14 n. 8).