Jewell R. DALE, Plaintiff,

v.

**INDIANAPOLIS POLICE DEPARTMENT,**
Defendant.

No. IP 94–1950 C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 8, 1996.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, Indiana, for Plaintiff.

James S. Stephenson, Stephenson Daly Morow & Kurnick, Indianapolis, Indiana, for Defendant.

## ENTRY

BARKER, Chief Judge.

Plaintiff Jewell Dale brings this suit under Title VII, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), and Indiana state common law, alleging that she was discriminated against on the basis of her race and gender. The matter is currently before the Court on defendant's motion for summary judgment and plaintiff's motion seeking leave to amend the complaint. For the reasons stated below, defendant's motion is granted in part, denied in part and denied as moot in part; plaintiff's motion is granted.

## I. FACTUAL BACKGROUND.

Jewell Dale is an African–American female who applied to the Indianapolis Police Department ("IPD" or "the Department") in August of 1992. Like the thousands of other applicants to apply that year, she was required to navigate a lengthy pre-hiring process that included a written examination, a physical agility test, an oral interview, a lie detector test and a psychological examination. Unlike most of the other applicants, however, Dale advanced beyond the pre-hiring phase and, on December 27, 1993, was sworn in with twenty-eight others as a member of IPD's 81st Recruit Class.

By all accounts, Ms. Dale had a difficult time at the training academy. According to Dale, fault lies with her instructors, Officers Deborah Robertson and Lloyd Crowe, who treated her more harshly and less supportively than they did the other mostly white, mostly male trainees. She claims, for example, that some of her classmates, "whose skill levels were inferior to hers, received higher scores than she did." (Plaintiff's Brief in Response, p. 5). She also claims that Crowe made derogatory remarks about African–American women, calling them lazy and incapable of performing police work.

According to the Department, however, Dale's difficulties stemmed from her poor physical condition and a lack of self-confidence, assertiveness and presence of mind, all of which caused her performance to be consistently substandard. For example, her December 27, 1993 performance report rates her oral communication skills, demeanor and motivation as "below expected." (Foley Aff., Exh. J). Her physical condition was also rated as generally "very poor." (Id.). Five months later, while her physical conditioning showed significant improvement, her performance was rated as either "unacceptable" or "below expected" in the five other performance categories. (Foley Aff., Exh. Z).

On April 26, 1994, Captain Timothy Foley, the Branch Commander of the Training Academy recommended to Chief of Police, James Toler, that Dale be terminated as a member of the Department. On May 6, 1994, Dale took the Defensive Tactics Practical exam for the second time, having failed it earlier on April 16. Like before, she missed eight of the twenty-five items on the test. (Foley Aff., Exh. AA). After several hours of remedial training, she took the exam a third time and again failed. (Foley Aff., Exh. BB). Finally, on May 20, 1994, Foley and Crowe accompanied Dale to Chief Toler's office, where her employment with the Department was terminated.

## II. ANALYSIS.

The Department filed the instant motion for summary judgment on January 11, 1996. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This "standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir.1995). Nevertheless, the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989).

### A. Race and Sex Discrimination Claims

The gravamen of Dale's suit is that the Department terminated her employment on account of her gender and race. To succeed on these claims, plaintiff must establish that she has been the victim of intentional discrimination, *see Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994), which she can do in two different ways: (1) by offering

direct proof of discrimination, *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or (2) by relying on indirect evidence using the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. *See Bruno v. City of Crown Point,* 950 F.2d 355, 361 (7th Cir. 1991), *cert. denied,* 505 U.S. 1207, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992).

■ Under the indirect method, which is the only method implicated here, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To satisfy that burden, plaintiff must show that (1) she is a member of a protected class, (2) she was meeting the legitimate expectations of her employer, (3) she suffered from an adverse employment action, and (4) others outside the protected class were treated more favorably. *EEOC v. Our Lady of the Resurrection Medical Center,* 1996 WL 70274, at *4 (7th Cir. Feb. 20, 1996); *Loyd v. Phillips Brothers, Inc.,* 25 F.3d 518, 522–23 (7th Cir.1994). Once the prima facie case is established, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Wolf v. Buss America, Inc.,* 77 F.3d 914, 919 (7th Cir.1996). The burden then returns to the plaintiff to show that the reason offered by the employer was not the real reason for the challenged action, but merely a pretext.[1] *Johnson v. University of Wisconsin–Eau*

*Claire,* 70 F.3d 469, 478 (7th Cir.1995). Importantly, the ultimate burden of persuasion remains at all times with the plaintiff to prove that the employer intentionally discriminated against her. *St. Marys Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

■ Here, there is some doubt as to plaintiff's ability to establish that she was meeting the legitimate expectations of the Department, the second element of her prima facie burden. Specifically, IPD points to nine separate "contact sheets,"[2] (Foley Aff., Exhs. B, C, D, E, F, G, I, K, N), fourteen different "inter-department communication[s]," (Foley Aff., Exhs. H, M, O, P, R, S, T, U, V, W, X, Y, AA, BB), two fitness evaluations (*Id.,* Exhs. A, L), two trainee performance reports, (*Id.,* Exhs. Q, Z), as well as the affidavits of her Academy instructors and two fellow classmates, all of which attest to or document the deficiencies of her performance. Nevertheless, plaintiff swears that her performance was adequate, her alleged deficiencies either exaggerated or falsified and, apparently, that is generally sufficient to satisfy the prima facie burden: a "determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of [her] work." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1114 n. 35 (7th Cir.1992), *quoting Williams v. Williams Elecs., Inc.,* 856 F.2d 920, 923 n. 6 (7th Cir.1988).[3]

---

1. Plaintiff may establish pretext by showing that the defendant's proffered reasons either (1) have no basis in fact, (2) did not actually motivate the employer's decision, or (3) were insufficient to motivate the discharge. *Samuelson v. Durkee/French/Airwick,* 976 F.2d 1111, 1114 (7th Cir. 1992).

2. A "contact sheet" is a form completed by a training instructor that "is intended to assist in recruit evaluation by documenting minor incidents involving recruit officers." (*See* Foley Aff., Exh. B).

3. We admit that absolute reliance on Dale's assertions concerning the sufficiency of her performance is somewhat problematic in this case. As noted by IPD, Dale "was not hired to be a

'recruit trainee,' but rather to progress in her abilities to become a police officer." (Defendant's Brief in Support, p. 15). Thus, because Dale was not yet a police officer, her basis for asserting that she would have performed the job adequately is at best tenuous.

This is not to say, however, that plaintiff has no basis for so asserting. Indeed, she swears that her performance at the Academy exceeded that of several classmates who, despite comparably deficient performances, were graduated to the rank of patrolman. Moreover, she presents facts to suggest that her instructors tampered with her evaluations and rigged exercises to ensure her failure. Thus, because these declarations, if taken as true, could lead a reasonable factfinder to conclude that her performance was actually sufficient to meet IPD's legitimate expectations,

■ Plaintiff's self-interested assertions of competence, however, are insufficient to suggest that IPD's non-discriminatory reason for the termination—that Dale was not cut out to be a police officer—is pretextual. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464–65 (7th Cir.1986). Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). Thus, "we are not concerned with the correctness" or the accuracy of IPD's assessment of plaintiff's skills, *Rand v. CF Industries, Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994), but only with whether the Department honestly believed in the reason it gave for terminating her. *Wolf,* 77 F.3d at 919–20.[4]

■ To suggest that her substandard performance did not actually motivate the Department's decision, plaintiff recounts a comment made to her by one of her instructors, Officer Crowe, to the effect "that black women are not cut out to do police work because most . . . are lazy." (Dale Aff., ¶ 16). This alleged comment is troubling for if it were actually made, and for purposes of this motion we must assume that it was, it gives rise to a permissible (though not the only possible) inference that Crowe—the person most responsible for evaluating the mettle of potential officers—believed that black women lack the right stuff. *See Gatlin v. Jewel Food Stores,* 699 F.Supp. 1266, 1268 (N.D.Ill. 1988).

■ Of course, it was either Branch Commander Foley or Chief Toler (or both) who made the decision to terminate Dale, not Crowe. Significantly, "where the discharging official made the discharge decision alone, discriminatory thoughts and motives of lower officials cannot be attributed to the discharging official." *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1155 (7th Cir. 1989); *see also Oxman v. WLS–TV,* 12 F.3d 652, 660 (7th Cir.1993). However, the con-

verse is also true; where a lower official "persuades his supervisors to endorse his decision to fire," *Shager v. Upjohn Co.,* 913 F.2d 398, 402 (7th Cir.1990), or "recommend[s]" the dismissal of, *EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1094 (5th Cir. 1994), or otherwise provides "input" in an employee's termination, *Jardien,* 888 F.2d at 1155, the superior can be liable for endorsing or "act[ing] as the conduit of" the subordinate's prejudice. *Shager,* 913 F.2d at 405.[5] Thus, because there is evidence to suggest that Crowe played an important role in training and evaluating the abilities of the 81st Recruit Class and that he harbored a discriminatory animus, a reasonable factfinder could infer that his prejudice infected his recruit evaluations and that his superiors then relied on this tainted information.

■ We do not deny, however, that plaintiff faces an uphill battle in this case. The Department has comprehensive documentation from several different instructors of Dale's alleged deficiencies. In addition, Officer Crowe, the alleged villain, is himself an African–American. And even if Dale succeeds in showing that race or gender was a motivating factor in Crowe's evaluations and that Chief Toler relied on those evaluations, she cannot recover damages if the Department demonstrates that the same action would have been taken in the absence of the impermissible motivating factor. 42 U.S.C. § 2000e–5(g)(2)(B)(ii); *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Doll v. Brown,* 75 F.3d 1200, 1202–03 (7th Cir.1996). These, however, are questions to be explored at trial. Accordingly, defendant's summary judgment motion is denied insofar as it related to Dale's Title VII claims.

## B. Equal Pay Act and State Law Claims

In her Brief in Response, plaintiff agrees to abandon her Equal Pay Act and pendent

---

they are sufficient to withstand the instant motion.

4. "In this regard, Dale must do more than challenge the judgment of [her] superiors through [her] own self-interested assertions. '[The employee's] perception of [her]self . . . is not relevant. It is the perception of the decision maker which is relevant.' " *Dale,* 797 F.2d at 464–65.

5. *See also Lam v. Univ. of Hawai'i,* 40 F.3d 1551, 1560 (9th Cir.1994) ("discrimination at any stage of the . . . hiring or promotion process may infect the ultimate employment decision"); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 419 (7th Cir.1994) (subordinate's remark allegedly showing age bias is relevant only if that "intent could reasonably be attributed to the primary decision maker").

state tort actions. Accordingly, defendant's motion is granted insofar as these claims are concerned.

### C. Failure to Name a Proper Defendant and Plaintiff's Motion To Amend the Complaint

Finally, defendant seeks summary judgment on the ground that the Department is not a proper party defendant. Plaintiff has since moved for leave to amend her complaint to cure this alleged defect. Because leave shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and because defendant can identify no accompanying prejudice, we grant plaintiff's motion for leave to amend. Defendant's summary judgment motion is therefore denied as moot to the extent it is premised on the naming of an improper party defendant.

### III. CONCLUSION.

For the reasons set forth above, the Court finds that material issues of fact preclude summary judgment of plaintiff's Title VII claims. The Court also finds that summary judgment is warranted as to plaintiff's Equal Pay Act and state common law claims. Finally, we grant plaintiff's motion seeking leave to amend the complaint, thus mooting defendant's summary judgment motion insofar as it relies on plaintiff's failure to name a proper party defendant. Accordingly, defendant's summary judgment motion is GRANTED IN PART, DENIED IN PART, AND DENIED AS MOOT IN PART. Plaintiff's motion to amend is GRANTED, and we HEREBY ORDER that plaintiff's tendered first amended complaint be filed as of the date of this Entry.

It is so ORDERED.