LaRon McKINLEY, Plaintiff-Appellant,

v.

Lt. Gary TRATTLES, et al.,
Defendants-Appellees.

Nos. 83–1345, 83–1406.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1983.

Decided April 23, 1984.

David J. Harth, Foley & Lardner, Madison, Wis., for plaintiff-appellant.

Jeffrey Gabrysiak, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for defendants-appellees.

Before WOOD and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

CUDAHY, Circuit Judge.

This case requires us to apply the standards for awards of punitive damages in civil rights cases announced last year in *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). A jury here awarded plaintiff LaRon McKinley $15,000 in punitive damages from defendant Michael Hammer for conducting a strip

search in an unconstitutional manner. The district court, on Hammer's motion for judgment notwithstanding the verdict, overruled the jury's award, but refused to overrule the jury's finding of liability or to grant a new trial on the liability issue. McKinley appeals the finding that he was not entitled to punitive damages and Hammer appeals the denial of the remainder of his post trial motion. For the reasons detailed below, we reinstate the jury's award of punitive damages, subject to a remittitur, and we affirm the district court's denial of the remainder of Hammer's post trial motion.

## I. Background

Before a prisoner confined in the Adjustment Center at the Wisconsin State Prison at Waupun, Wisconsin ("Waupun"), is returned to his cell, a strip search is conducted to determine if the inmate is carrying contraband. Thus, when McKinley, a Waupun inmate held in the Adjustment Center for disciplinary violations, returned to the Center from a disciplinary hearing, he was forced to undergo a strip search which included an inspection of his anal cavity. McKinley subsequently filed a civil rights complaint alleging that he was forced to undergo two strip searches and that those strip searches were conducted unreasonably, in violation of his constitutional rights. He also alleged that the use of the chemical spray, mace, during the searches was unconstitutional but that claim was voluntarily dismissed because a class action challenging the use of mace was pending in the District Court for the Eastern District of Wisconsin.

At trial, McKinley called several witnesses who testified that McKinley was strip searched in a cage within view of other inmates and that McKinley was severely beaten and maced after refusing to submit to a second visual inspection of his anal cavity. The witnesses, and McKinley, testified that after McKinley was maced for

[*] Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

refusing to cooperate in the second visual inspection of the anal cavity, he was beaten by several prison guards who had donned riot gear and entered the strip search cage. Then, according to McKinley's testimony, he was handcuffed and forced to submit to a second anal cavity inspection. This time McKinley testified that someone, in violation of prison regulations, "[stuck] their finger in [McKinley's] anal cavity."

After the second anal cavity inspection, McKinley testified that he was further brutalized by being dragged to a cell with handcuffs on, which caused "the handcuffs to scar up and down [his] wrists." Tr. of McKinley's Testimony at 17. He further claimed that he was forced to remain naked in his cell for several hours and, allegedly contrary to prison policy, he was not given a shower for two days after the use of mace.

McKinley further alleged, and testified, that he and two other inmates were forced to undergo strip searches two days after the incident depicted above, even though none of the three inmates had left the control area. He alleged that these searches were conducted pursuant to a policy of "whimsically and capriciously demanding unreasonable and excessive and arbitrary anal searches" which serves to "dehumanize [and] is degrading, disgusting and invidious[.]" Complaint, ¶ 60. *Cf. Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir.1983).

The defendants' testimony contradicted McKinley's on almost all material points. For instance, Sergeant James D. Smith, who was the ranking sergeant in charge of the Adjustment Center at the time of the incident, gave a different account of the strip search.

According to Sergeant Smith, he was called to the strip search cage because McKinley refused to comply with the order to complete the search. After asking McKinley to allow the search to be completed, Smith ordered him to do so. Smith testified that to his knowledge, McKinley at no time complied with the order to "bend down and spread the cheeks of his but-

tocks[.]" Tr. Vol. III–A at 24. The Security Office was then called and another defendant, Lieutenant Gary Trattles, attempted to coax McKinley to comply. Trattles then warned McKinley that mace would be used to force completion of the strip search and, after McKinley continued to refuse, he was maced. Then, officers with riot gear and shields entered the cage to forcibly complete the strip search. McKinley resisted and fought, but eventually the search was completed and McKinley was brought to a cell, given his shorts, a washcloth and a towel, and offered a shower which McKinley refused. At no time did any prison employee beat, kick or use excessive force on McKinley. Tr. Vol. III–A at 28.

Sergeant Smith testified that the search was necessary to preserve the safety of the Adjustment Center. Apparently, the policy of strip searching inmates upon their return to the Adjustment Center was designed to prevent an inmate from smuggling contraband into the Center. In the past, Smith says, he found razor blades, wrapped in tape, in the buttocks area of inmates. Thus, Smith felt that the integrity of the Center would have been threatened if the search of McKinley had not been completed.

The jury found only two of the defendants guilty of constitutional violations, Trattles and Hammer. The jury also found that Trattles was entitled to immunity and that Hammer was liable for the $15,000 punitive damages award.

## II. No. 83-1406

We first consider Hammer's appeal from the denial of a judgment notwithstanding the verdict on liability or, in the alternative, a new trial. Hammer claims that no evidence supports the jury's verdict holding him liable for unconstitutionally conducting the strip search of McKinley. In reviewing the denial of a judgment notwithstanding the verdict, we apply the same standard applied by the district court: "The motion should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most

favorable to the party opposing such motion, is such that [people] in a fair and impartial exercise of their judgment may reach different conclusions." *Kolb v. Chrysler Corp.*, 661 F.2d 1137, 1140 (7th Cir.1981). This is a demanding standard and, under it, there would perhaps not be many cases in which we could conclude that a jury behaved irrationally.

### A. *Evidence Supporting Liability*

■ When all reasonable inferences are drawn in McKinley's favor, the testimony amply supports the jury's finding of liability. The district court, in denying Hammer's post trial motion, found that the jury could have believed two key portions of the testimony. First, it could have believed McKinley's claim that he felt a finger enter his anal cavity. Second, it could have believed Hammer's testimony that he was the only prison official who inspected plaintiff's anal area. From these two statements, the credibility of which is for the jury to determine, the jury could reasonably disbelieve Hammer's denial when he denied putting his finger in the plaintiff's anus. Hammer admits that if he "put his finger in plaintiff's anus [t]he jury could have concluded that such alleged conduct was excessive and unreasonable." [1] Defendant's Brief at 30. *See also Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–1885, 60 L.Ed.2d 447 (1979). Because we disagree with Hammer's assertion that the required inferences are unreasonable, we cannot conclude that the denial of judgment notwithstanding the verdict was erroneous.

### B. *"Good Faith" Immunity*

■ Hammer also argues that the doctrine of "good faith" immunity requires reversal. In this connection, we are troubled by the district court's application of the immunity doctrine. Our reading of recent Supreme Court cases leads us to conclude that Hammer's testimony that he believed, in good faith, that his conduct was authorized by the rules and regulations of the prison, is legally irrelevant to the immunity issue in this case. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) eliminated, for most purposes, the subjective element of the qualified immunity defense. The Court held that officials performing discretionary functions are liable for damages only if their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Except in "extraordinary circumstances," the officials' actual knowledge is irrelevant. *Id.* at 819, 102 S.Ct. at 2739. The district court instructed the jury that it should find good faith unless the defendant's conduct "violated clearly-established statutory or constitutional rights of which a reasonable person would have known." In *Harlow,* the Supreme Court indicated that immunity was a question of law for the judge to decide in the light of the "state of the law." 457 U.S. at 818–19, 102 S.Ct. at 2738–2739. We do not believe a jury is competent to decide the "state of the law." Therefore, the jury instruction on immunity was erroneously given and the matter should have been reserved to the court. However, since, as the record indicates, the defendants requested an instruction substantially identical to the one given, we should not remand the case for a new determination of the immunity issue. Such a remand is unwarranted since the defendants failed to preserve for appeal the apparent error in submitting immunity to the jury.

■ Even if Hammer's subjective good faith were relevant to the immunity issue, and even if it was proper to submit the issue of subjective good faith to the jury, we would still affirm the jury's finding of

---

**1.** Hammer recognizes that the jury was free to find liability if the manner in which the strip search was carried out was excessive or unreasonable. Defendant's Brief at 31. The district court found that the prison regulations, if followed, satisfied the reasonableness requirement of the fourth amendment. Those regulations allow only qualified medical personnel to conduct manual searches of the anal cavity. Since the alleged conduct violated the applicable regulation, Hammer's case is not helped by the finding that the regulations are reasonable.

lack of good faith. To find liability, the jury was required by the instructions to find that Hammer violated the strictures of the regulations on strip searches. The evidence, as found by the district court, supported an inference that Hammer acted in intentional disregard of the regulations. The jury apparently did not believe Hammer's denial that he inserted his finger in the plaintiff's anus, and they could likewise disbelieve his claim of "good faith" reliance on the regulations. Further, in finding Hammer liable for punitive damages, the jury was required to find that Hammer acted "maliciously," "wantonly" or "oppressively." The definitions of these terms provided by the district court required that the jury find, at a minimum, reckless disregard for McKinley's rights. We agree with the district court that this finding by the jury necessarily entailed a rejection of Hammer's "good faith" testimony. Thus, the denial of the JNOV on good faith, even under the erroneous legal standard applied, was justified.

## C. *New Trial*

Hammer also claims that the district court abused its discretion when it denied his motion for a new trial. Hammer raises three grounds which, he claims, require a new trial. We address those claims seriatim.

First, he claims that one of the special verdict questions misled the jury. The question asked "which defendants, if any, were directly and personally involved in [a] violation of plaintiff's rights?" We find absolutely no merit to defendant's argument that, under this special verdict question, Hammer was found liable without being found to have violated plaintiff's rights. A common sense reading of the instruction is exactly opposite in thrust to that claimed by Hammer. Further, the jury's findings on the punitive damage issue show beyond a shadow of a doubt that it found Hammer liable based on his direct participation in the strip search. Therefore, even if we were not constrained by the abuse of discretion standard which governs our review

of the denial of a new trial, we would find this challenge meritless.

Defendant Hammer's second ground for a new trial is equally lacking in substance. He argues that the district court erred by refusing to instruct the jury that it could find liability only if it found an intentional or knowing violation of McKinley's constitutional rights. However, the standard governing the constitutionality of strip searches in prisons is reasonableness, *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). Further, contrary to Hammer's assertions, the Supreme Court has decided that liability for civil rights violations under § 1983 can in some situations be predicated on negligence. *Parratt v. Taylor,* 451 U.S. 527, 532–35, 101 S.Ct. 1908, 1911–1912, 68 L.Ed.2d 420 (1981). In any event, we agree with the district court that the jury was fully justified in finding, based on the record evidence, intentional conduct. The punitive damage award belies any claim that liability was founded upon mere negligence.

The third alleged ground for a new trial is also without merit. Hammer contends that the jury was left to pass on the validity of the regulations governing strip searches in Wisconsin prisons. Such a prerogative for the jury would have been contradictory to the district court's earlier finding that the regulations were constitutional on their face. We find that the instructions, as given, were an accurate statement of the law under *Bell v. Wolfish, supra.* Further, they specifically instructed the jury to evaluate the reasonableness of the search "as performed on plaintiff." Nothing in the instructions required the jury to evaluate the policy governing strip searches in general. Thus, there exists no valid ground for a new trial.

Therefore, the judgment appealed from in No. 83–1406 is affirmed.

## III. No. 83–1345

In the appeal in No. 83–1345, we are asked to reinstate the jury's award of $15,000 punitive damages. Because we believe

that the district court misread the law governing awards of punitive damages in civil rights cases, we reverse the grant of the JNOV and reinstate the punitive award. However, we agree with the district court that $15,000 is excessive and therefore we remand the case to the district court to set a remittitur of the punitive damage award.

### A. Smith v. Wade

Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) set the standards for punitive damages awards in § 1983 cases. In that case, the Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. at 1640. The jury must also, of course, make the discretionary moral judgment that punishment or deterrence would be served by an award of punitive damages. Id. at 1638–39.

■ The district court's instructions to the jury on punitive damages were accurate and complete.[2] Under the instructions, which are set out in the margin, the jury could award punitive damages only if Hammer acted in reckless or callous disregard of McKinley's rights, if Hammer's

actions were the result of spite or ill will or if the conduct was oppressive. These jury instructions, submitted by the defendant, comply with the Supreme Court's mandate in Smith v. Wade, supra. See also McFadden v. Sanchez, 710 F.2d 907, 913 (2d Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983); Stokes v. Delcambre, 710 F.2d 1120, 1126–27 (5th Cir.1983); Boussom v. City of Elkhart, 567 F.Supp. 1382 (N.D.Ind.1983).

■ The trial court erred when it held that the required support for the award was lacking. It is true that, as the district court noted, we have consistently held that punitive awards are justified only if "aggravating circumstances" or "malicious intent" are present. See, e.g., Freeman v. Franzen, 695 F.2d 485, 490 (7th Cir.1982); Merritt v. De Los Santos, 721 F.2d 598, 601 (7th Cir.1983). But as in Merritt, where the constitutional violation is clear, intentional and, in addition, involves a violation of administrative regulations of which the defendant was aware, a court should not disturb the jury's award of punitive damages. See Merritt, 721 F.2d at 602.

■ However, the district court interpreted Freeman to mean that there must be misconduct over and above that required

**2.** The district court instructed the jury as follows:

Punitive damages. Regardless of actual damages, the law permits the jury under certain circumstances to award the injured person punitive and exemplary damages in order to punish the wrongdoer for some violation of the constitutional rights or some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

If the jury should find from a preponderance of the evidence in the case that the act or omission of the defendants which proximately caused actual injury or damage to the plaintiff was maliciously or wantonly or oppressively done, then the jury may, if in the exercise of discretion they unanimously choose to do so, award such amount as the jury shall unanimously agree to be proper as punitive and exemplary damages.

An act or a failure to act is maliciously done if prompted or accompanied by ill will or spite or grudge either toward the injured person individually or toward all persons in

one or more groups or categories of which the injured person is a member.

An act or a failure to act is wantonly done if done in reckless disregard or callous disregard of or indifference to the rights of one or more persons including the injured person.

An act or a failure to act is oppressively done if done in a way or manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse, or abuse of authority, or power, or by taking advantage of some [weakness] or disability or misfortune of another person.

Whether or not to make any award of punitive and exemplary damages is a matter exclusively within the province of the jury. But the amount of such extraordinary damages when awarded must be fixed with calm discretion and sound reason, and must never be either awarded or fixed in amount because of any sympathy or bias or prejudice with respect to any party to the case.

Tr. Vol. III–C at 114–16.

to find liability in order to justify punitive damages. We recently recognized, however, that such an interpretation of our prior cases is no longer viable in light of the contrary holding in *Smith v. Wade*, 103 S.Ct. at 1638. *See Merritt v. De Los Santos*, 721 F.2d at 601. Under *Smith*, if the conduct upon which liability is founded evidences reckless or callous disregard for the plaintiff's rights or if the conduct springs from evil motive or intent, punitive damages are within the discretion of the jury. *See also Clark v. Taylor*, 710 F.2d 4, 14 (1st Cir.1983). Our cases may therefore be read to require, as aggravating circumstances, something more than mere negligence before punitive damages can be assessed, but they may not be applied to restrict the availability of punitive damages in ways inconsistent with *Smith v. Wade*.

In this case, the district court recognized that the jury could infer that Hammer *intentionally* exceeded the permissible scope of the strip search by inserting his finger into McKinley's anus. Hammer's testimony further indicates that he was aware of the prison policy allowing only medical personnel to perform that sort of search. In this situation, the jury was entitled to find "reckless disregard" since, presumably, an intentional violation subsumes recklessness. We also believe that the jury could have made the discretionary moral judgment, which is essentially unreviewable, that Hammer's conduct should be punished and like conduct deterred. *See Smith v. Wade*, 103 S.Ct. at 1638. This is especially true where, as here, contrary prison regulations (and the possibility of internal enforcement) apparently failed to deter the challenged conduct. We recently endorsed the characterization of strip searches as " 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive [and] sig-

nifying degredation and submission ....' " [3] *Mary Beth G., supra*, 723 F.2d at 1272, *quoting Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D.Wis.1979), *aff'd* 620 F.2d 160 (7th Cir.1980). On the other hand, we recognize the importance of strip searches to safety and order in the prisons, and we are aware that a strip search carried out in prison may not be subject to the same constraints as apply in other settings. But the Supreme Court also recognizes the prisoner's interest in the carrying out of strip searches in a reasonable manner in light of the circumstances. *Bell v. Wolfish, supra*. Adherence to the prison's own regulations should serve these competing interests.

### B. *Amount of Punitive Damages*

The district court indicated in its opinion that, if it were to uphold the award of punitive damages, it would find the damages assessed by the jury excessive. We agree that $15,000 is excessive. We think it appropriate in these circumstances to allow the district court, in the first instance, to set an appropriate remittitur. In this connection, we believe that, as a guideline, an upper limitation should be in the range of $6,000. We are not presently establishing this amount as a mandatory ceiling, but we have some difficulty, based on what is now before us, in seeing how a greater amount could be convincingly justified.

Under the law which governs the amount of punitive damages, we have indicated that we must reject the amount of a jury's award if it exceeds what was required to serve the objectives of deterrence and punishment. *See Lenard v. Argento*, 699 F.2d 874, 890 (7th Cir.1983). As we have noted, we will not disturb the jury's finding that an award of punitive damages is appropri-

---

**3.** The district court was reluctant to take into account the nature of strip searches in evaluating whether the punitive award should be upheld. The court apparently felt that the characteristics of the search were relevant only to the question of compensatory damages, which the jury declined to award. We feel, however, that the appropriateness of punitive damages may

often depend upon the nature of the violation. A jury may not find it appropriate to punish or deter violations that seem relatively innocuous when compared to strip searches. Deterrence of the next strip search, however, may prevent the sort of humiliation and degradation inherent in these searches, especially when they are carried out unreasonably.

ate in the case before us. However, we feel that an award substantially exceeding the guideline which we have indicated might result in a windfall to McKinley and would, in its effect, exceed the necessary and permissible level of punishment and deterrence. *See Lenard v. Argento, supra.* Our conclusion might be different if the jury had sustained more of McKinley's allegations. The jury may have been influenced by the seriousness of the allegations made by McKinley and, even though it felt that McKinley had not met his burden of proof, the jury may have been moved by a desire to compensate McKinley for his possible, though not proven, injuries. In any event, we are convinced that the $15,000 award exceeds any reasonable requirement of deterrence or punishment. The dismissal of the remaining defendants and the district court's view of the facts supporting liability, coupled with the failure of the jury to assess compensatory damages, suggests that the goals of punishment and deterrence will be adequately served by a reduced award.

For these reasons, we remand the case to the district court with instructions to grant Hammer a new trial as to the amount of punitive damages, subject to McKinley's right to accept in this proceeding an award, set by the district court, with a guideline limitation of $6,000. We rely on the district court to exercise its discretion in setting a specific amount which will best serve the important goals of punitive damages without unduly hampering the necessary functioning of the prison.

### C. *Summary*

Therefore, the district court's order vacating the award of punitive damages is reversed and the jury's award is reinstated subject to a remittitur reducing the award to an amount to be set at the discretion of the district court with a suggested guideline limitation of $6,000.

### IV. Conclusion

No. 83–1406 is affirmed, and No. 83–1345 is reversed and remanded for proceedings consistent with this opinion.