Bridget Y. GILLESPIE, Plaintiff,

v.

FIRST INTERSTATE BANK OF WISCONSIN SOUTHEAST, Defendant.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

FIRST INTERSTATE BANK OF WISCONSIN SOUTHEAST, Defendant.

Nos. 85–C–1318, 85–C–1393.

United States District Court, E.D. Wisconsin.

July 14, 1989.

Thomas Nelson, Yollander Hardaway, E.E.O.C., Milwaukee Dist. Office, Milwaukee, Wis., for plaintiffs.

Fred G. Groiss, Quarles & Brady, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

STADTMUELLER, District Judge.

Plaintiff, Bridget Y. Gillespie, brought this action against the defendant First Interstate Bank of Wisconsin–Southeast (First Interstate)[1] alleging racial discrimination in employment and retaliatory discharge in violation of 42 U.S.C. § 1981. Gillespie filed her action on September 6, 1985. Plaintiff, the Equal Employment and Opportunity Commission (EEOC) filed an action on September 25, 1985 against First Interstate alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The two cases were consolidated for all further proceedings by Judge Terence T. Evans on January 8, 1986. Judge Evans transferred the case to this branch of the court for a trial on the merits after my appointment to the federal bench. The case was tried to the court and a jury commencing on April 5, 1988. The jury returned a verdict in favor of First Interstate on two instances of alleged discrimination and in favor of Gillespie on the issue of failure to promote her to an assistant teller supervisor position in May of 1983, as well as on the issue of discriminatory or retaliatory discharge in October of 1983.

■ At the court's request the parties have submitted proposed findings of fact and conclusions of law with respect to the Title VII claim, which is now ready for resolution. Defendant has renewed its motion to dismiss this claim. In addition, defendant has before the court various motions to vacate or set aside the verdict, for judgment notwithstanding the verdict (JNOV or judgment n.o.v.) or in the alternative for a new trial, as well as a motion for a directed verdict. These motions are also now ready for resolution.[2]

## FACTS

Plaintiff was hired by defendant as a teller on August 24, 1981, and was promoted to commercial teller in the early fall of

1. At the time of filing of these lawsuits, the defendant was known as Continental Bank & Trust Company (Continental), a Wisconsin corporation doing business in Milwaukee, Wisconsin and employing at least fifteen employees. Continental was purchased by First Interstate and this action has continued against the successor corporation.

2. On June 15, 1989 the Supreme Court refused to overrule its decision in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) that § 1981 prohibits private racial discrimination in the making and enforcement of contracts. *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). However, the *Patterson* Court did hold that racial discrimination or harassment relating to the terms and conditions of employment was not actionable under § 1981. This conduct was more appropriately actionable under Title VII. Because Gillespie was awarded a substantial sum of money by the jury on her § 1981 claim, I felt compelled to analyze whether the

*Patterson* decision should be applied retroactively to Gillespie's claims. In light of the standards governing retroactivity, *see Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and *Anton v. Lehpamer,* 787 F.2d 1141, 1143 (7th Cir.1986), I conclude that *Patterson* should not be retroactively applied to this case. It is clear that racial discrimination in the context of discharge or other conditions of employment was recognized as actionable under § 1981 by the Seventh Circuit prior to *Patterson. Williamson v. Handy Button Machine Co.,* 817 F.2d 1290 (7th Cir.1987). In addition, nonretroactive application will not hamper the interests in establishing uniformity and reducing litigation as this case is today resolved for all practical purposes in this court. Finally, this case was already tried and awaiting a decision on post verdict motions when *Patterson* was decided. The parties have expended substantial time and money in prosecuting or defending this suit. I find that retroactive application of *Patterson* would be entirely unfair and inequitable under the circumstances.

1981. Plaintiff then applied for two positions which became open in the bank. The first was as a new accounts representative, the second a position in the special services department. The testimony at trial showed that both of these positions would have amounted to a lateral transfer for Gillespie. Although qualified for each of these positions Gillespie's requests to transfer were denied for legitimate non-discriminatory reasons as evidenced by the jury's responses to questions 1 and 3 of the special verdict.

In May 1983, the position of assistant teller supervisor became available, and Gillespie applied for the position. She was denied the promotion and a white female, Debbie Michalovitz was given the position instead. The decision to promote Michalovitz, rather than Gillespie, was made by Howard Hoth a bank vice-president, and Laurie Miller the bank's teller supervisor.

Gillespie had the best balancing record among the tellers at the defendant's bank. Plaintiff was never placed on probation by the defendant, while Michalovitz had been placed on probation approximately two years prior to May 1983. This probation was for tardiness, poor balancing and making too many personal phone calls. Michalovitz's performance did improve during the time period immediately prior to May 1983 and immediately prior to the promotion her balancing percentage rivaled Gillespie's. However, after receiving the promotion Michalovitz was again placed on probation on or about August 24, 1983. Michalovitz had approximately one month more seniority than did plaintiff.

First Interstate followed a pattern of promotion through the various teller positions. In ascending order the progression included: teller, commercial teller, assistant teller supervisor, and teller supervisor. In May 1983 plaintiff held a commercial teller position, while Michalovitz served as a teller. Subsequent to May 1983, First Interstate continued this general pattern of progression in job promotions.

The testimony of Ruth Dunning, Gillespie's former supervisor and the person who hired her, established that Gillespie was qualified for the assistant teller position. Customers would stand in line waiting for plaintiff to wait on them, rather than accept service from other tellers. Gillespie had the best balancing record among the tellers and received memoranda from Mr. Hoth commending her on this record. She was also a teller trainer for the bank's new teller-employees.

The defendant's proffered reasons for denying Gillespie the position included the fact that she lacked enthusiasm and spirit to be a leader; that Michalovitz participated in the bank's spirit contest and won an award; that Michalovitz had more seniority than Gillespie; and Michalovitz showed significant improvement both in balancing and in her overall performance in the two years immediately preceding May 1983. Michalovitz also made suggestions concerning the more efficient operation of some of the bank services.

On June 27, 1983 Gillespie filed charges of discrimination with the EEOC over the denials of her applications for other positions. The EEOC investigated the complaints, which included fact finding hearings. Gillespie was terminated in October 1983, allegedly on account of insubordination in criticizing Miller in the presence of Hoth and other bank employees. Other facts will be stated as necessary in the discussion which follows.

## SUCCESSOR LIABILITY

As previously noted, this case was originally filed against Continental, and was continued against First Interstate following the merger. The merger agreement was filed with plaintiffs' motion to amend the caption to reflect the merger. The issue of successor liability was not raised at that time.

At the request of the court, the parties addressed this issue first during the briefing of post trial motions. I must resolve whether the defendant successor corporation should be held liable for punitive and compensatory damages. The question arose as a result of *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir.1985) in which the Seventh Circuit held that a successor

corporation could be held liable under § 1981, but only for the "make whole" remedies typically available under Title VII, that is, back pay, front pay, etc. The doctrine is applicable in Title VII cases as well. *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir.1986). Plaintiff EEOC contends that defendant agreed to be responsible and assume all liabilities of the Continental Bank, and therefore should be bound to pay any type of damages awarded. I find that the merger agreement, along with the various factors listed in *Musikiwamba,* justify liability on the part of First Interstate for damages the jury awarded against the defendant, be they compensatory or punitive.

In *Musikiwamba,* the court found that the policies underlying the federal employment discrimination laws justified imposing successor liability. However, the court also recognized that in most cases the successor company was an innocent party. 760 F.2d at 746–747. There were nine factors identified which would justify imposing liability in an employment discrimination case. These are:

(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment and methods of production; and (9) whether he produces the same product.

760 F.2d at 750, citing *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir.1974). The first two of the above factors are of critical importance, *Musikiwamba,* 760 F.2d at 750, and the other seven "merely provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers." *Id.* at 751.

Defendant makes three arguments in support of its position that *Musikiwamba* bars recovery for plaintiffs in this case. First, defendant contends that plaintiffs have failed to plead successor liability to sustain this cause of action. Second, defendant contends that the factors listed in *Musikiwamba* and *MacMillan* are not met here. Finally, defendant contends that even if successor liability does attach in this case, only the make whole remedies of Title VII are available. Gillespie argues that Musikiwamba is inapplicable to this case because this case involves a statutory merger rather than a purchase of assets. The EEOC argues that the merger agreement supports liability, and even if it did not, then all the above factors are met to satisfy successor liability.

▮ I find successor liability to be appropriate in this case. First, defendant has waived any argument based upon failure to plead this issue because when the caption was first amended, First Interstate failed to raise the issue and in fact consented to the change. It would be patently unfair to force plaintiffs to relitigate this entire matter when the issue could have been raised prior to trial. In addition, requiring amendment at this stage would be only a *pro forma* requirement as amendment of the pleadings can be allowed even after a trial on the merits to reflect the evidence presented. Fed.R.Civ.P. 15(b).

Application of the factors listed above also supports successor liability. First Interstate had notice of the pending case prior to the merger, and defendant has raised no argument that Continental would have been unable to satisfy a judgment absent the merger. Therefore, imposing liability will not place plaintiffs in a better position than had the merger not occurred. There is a substantial continuity in operations as First Interstate has virtually continued intact Continental's banking operation. Both Hoth and Miller, the two supervisory personnel accused of the discrimination, were retained by First Interstate following the merger. There is no evidence concerning the number of other Continen-

tal employees retained by First Interstate, but I do not find that relevant. *See Musikiwamba,* 760 F.2d at 751 (number of predecessor's employees not as relevant in an employment discrimination case as in a case involving unfair labor practices or union bargaining). Finally, the last two factors (same machinery or equipment and same product), I also find irrelevant as these would be important in a manufacturing operation rather than a service related business such as a bank.

I also find First Interstate's assumption of all Continental's liabilities to be relevant. It certainly evidences the fact that the successor defendant went into this merger with eyes wide open, and factored the potential liability of this lawsuit in the negotiations.

The final matter, whether compensatory and/or punitive damages should be available presents a more difficult question. The *Musikiwamba* court specifically held that the successor doctrine as applied in § 1981 cases should be limited to the "make whole" remedies of Title VII. 760 F.2d at 749, and at 755 (Eschbach, Judge concurring). The rational is that an innocent successor should not be forced to pay for another's intentional discrimination. Denial of compensatory and punitive damages would not thwart the purposes underlying both Title VII and § 1981. *Id.* However, in the instant case the two persons accused of discrimination were retained as employees and the case was pending at the time of the merger. Under these circumstances First Interstate, while not the actual employer which discriminated, cannot be described as an innocent successor such as found in *Musikiwamba.* Therefore, I conclude that it is entirely appropriate to impose liability for all categories of damages being sought by plaintiff at the time the merger agreement was reached, including compensatory as well as punitive damages.

## MOTION FOR JNOV OR A NEW TRIAL

Defendant has moved for judgment notwithstanding the verdict or in the alterna-

tive for a new trial on the issues related to Gillespie's discharge and denial of her promotion. Defendant claims that the court erred in the jury instructions used and that the verdict is inconsistent with and unsupported by the evidence. For the reasons stated below, the motion for judgment notwithstanding the verdict will be granted as to the jury's answer to questions numbered five and six in the verdict (denial of promotion), but denied as to the answers to verdict questions numbered seven and eight (discharge). The jury's answer to question number nine, concerning liability for punitive damages will be undisturbed and discussed separately.

Plaintiffs presented no direct testimony of racial animus on the part of either Miller or Hoth. They proceeded with the indirect method of proving this case. (*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).) Under this method, plaintiffs had to establish a *prima facie* case by proving: (1) that Gillespie was a member of the protected class; (2) that she met her employer's legitimate expectations; (3) that she suffered an adverse employment decision (termination or failure to promote); and (4) that others not in the protected class were treated more favorably. *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 923 (7th Cir.1988). Once a prima facie case is established, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id.* This is only a burden of production as the "ultimate burden of persuading the trier of fact.... remains at all times with the [employee]." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. If the employer carries its burden, the employee has the opportunity to prove by a preponderance of the evidence that the employer's articulated reason is pretext.[3] *Id.* Pretext can be shown "either directly by

---

**3.** The Supreme Court has recently addressed the shifting burdens of proof in Title VII cases, and

placed the burden on the employer to prove by a preponderance of the evidence that its deci-

persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095. Defendant admits that plaintiffs have established a *prima facie* case on the promotion issue, but contend plaintiffs have failed to establish a *prima facie* case on the discharge issue.

## A. Promotion.

■ As noted above, the bank's proffered reasons for denying Gillespie's request for promotion to the assistant teller supervisor position included Michalovitz's greater seniority, her spirit and enthusiasm for her job and employer, together with her improved job performance, and suggestions for improved efficiency in some of the bank's services.

In rebutting defendant's reasons for selecting Michalovitz, plaintiffs again relied on the much same evidence used to establish the *prima facie* case, that is that Gillespie was qualified for the position, that others were generally promoted from commercial teller to assistant teller supervisor and that her balancing record was the best. A plaintiff's rebuttal evidence of pretext should focus on the specific reasons advanced by the bank in support of its employment decisions. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1414 (7th Cir.1984). The *La Montagne* court identified three ways that a plaintiff could show indirectly that the proffered reasons were unworthy of credence. These include: "by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the [employment decision], or if they were factors, by showing that they

were jointly insufficient to motivate the [employment decision]." *Id.* at 1414–1415 (footnote omitted).[4]

Gillespie presented no evidence to show directly that a discriminatory reason more likely motivated Miller and Hoth in promoting Michalovitz rather than her. She has also failed to prove pretext indirectly by showing that the bank's reasons for Michalovitz's promotion were not actually true. Michalovitz balancing record had improved, and she did win an award in the spirit campaign, and she did have more seniority than did Gillespie. Likewise, plaintiffs have failed to show that any of the factors were not the real reasons or that they were insufficient to support the decision to promote Michalovitz. Testimony was presented that showed the bank did place an emphasis on an employee's company spirit in determining promotions.

Evidence of Michalovitz's placement on probation after receiving the promotion does not imply that the bank's reasons were untrue. This may imply that the bank made a mistake in its decision, but mistakes in business decisions are not prohibited under either Title VII or § 1981. The strongest evidence of pretext was that Michalovitz was promoted from the teller position, rather than from a commercial teller position, as was the bank's usual practice. This does not sufficiently rebut defendant's evidence to show pretext. I therefore, conclude that Gillespie has failed to prove the bank's proffered reasons for failing to promote her to assistant teller were pretextual. Defendant's motion for JNOV on this issue will be granted.

■ Even if I were to find that there was sufficient evidence to support the jury's verdict with respect to the discriminatory failure to promote, I would be

sion would have been the same absent the discriminatory motive. *Price Waterhouse v. Hopkins,* ── U.S. ──, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). However, the shifting of burdens applies only in a mixed motive case where the employee has submitted direct evidence that illegitimate motives played a role in the employer's decision. Gillespie has presented no direct evidence that race played any part in the bank's decision to deny her the promotion to assistant

teller supervisor. Her complaint was based on her feeling that this was the reason because she was the only black teller and she was qualified for the position.

**4.** The Seventh Circuit neither required that these three methods be used, nor did it find that the three ways exhausted the possibilities. 750 F.2d at 1415, n. 6.

obliged to grant the defendant's motion for a new trial on this issue. I have concluded that the jury instruction given on plaintiff's ultimate burden was erroneous. The instruction read in relevant part:

In order for the plaintiff to recover on her claim against the defendant, plaintiff must prove the following essential elements by a preponderance of the evidence:

*First:* That the defendant intentionally discriminated against the plaintiff; that is, plaintiff's race was a motivating factor in defendant's decisions not to accommodate her request for lateral transfers or a promotion and to discharge her; and

*Second:* As a direct result of such discrimination, plaintiff sustained damages.

Plaintiff must show that the defendant intentionally discriminated against her because of her race. In deciding whether defendant intentionally discriminated because of plaintiff's race, your job is to determine what motivated the person or persons who decided against plaintiff's requests for lateral transfers and a promotion and who discharged the plaintiff.

When plaintiff has offered evidence from which you could conclude that the defendant discriminated against her because of her race, defendant may show that it had a reason other than race for its actions. Defendant may also answer plaintiff's case with evidence which shows a practice of non-discriminatory decision-making.

If defendant has shown reasons for not granting plaintiff's requests for lateral transfers and a promotion and for discharge other than race, plaintiff may show that these were not the true reasons for defendant's actions. The plaintiff must prove that the defendant intentionally discriminated against her based on her race and she may do so by demonstrating that the explanation the defendant offered for its actions affecting her employment are unworthy of belief. Thus, in the final analysis, you, the jury, must decide which party's explanation of the employer's motivation you believe.

In order for you to find for the plaintiff, you must find from all of the evidence that the plaintiff has proved by a preponderance of the evidence that the defendant did not grant her request for lateral transfers or a promotion and discharged her because of her race even if that was not the only reason.

Plaintiffs contend that defendant waived its right to challenge this instruction because it never submitted a jury instruction which called for a different statement of Gillespie's burden. However, defendant did request an instruction that plaintiffs must prove that *but for* the racial discrimination, she would not have been denied the transfers, promotion or terminated. A plaintiff must prove that she would not have suffered the adverse employment action "but for" the employer's discrimination. *Williams v. Williams Electronics, Inc.*, 856 F.2d at 923; *La Montagne*, 750 F.2d at 1409. "When a jury instruction is erroneous there must be a new trial unless the error is harmless." *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280 (7th Cir.1986).

I find that in this case the instruction on plaintiff's ultimate burden was erroneous and it was not harmless. The problem with the above quoted instruction, particularly the last paragraph, is that it allowed the jury to find that plaintiff had proved defendant's stated reasons were pretext without finding that race was a substantial factor in the decision. *See Price Waterhouse,* —— U.S. at ——, 109 S.Ct. at 1796 (O'Connor, J. concurring). Consistent with *La Montagne,* I conclude that with respect to plaintiff's burden of persuasion the jury should have been instructed as follows:

In order for you to find for the plaintiff, you must find from all the evidence that the plaintiff has proved by a preponderance of the evidence that the defendant did not grant her request for lateral transfers or a promotion and discharged her because of her race. To satisfy her burden of proving racial motivation, plaintiff must persuade you that but for her race, the conduct would not have occurred.

While this would be sufficient ground for granting a new trial, the grant of the JNOV on the issue of failure to promote, in my view, makes the jury instruction issue moot.

### B. Discharge.

■ Defendant contends that Gillespie has failed to meet her *prima facie* case on the issue of discharge and therefore is not entitled to judgment on the verdict. A plaintiff is not obligated to use the indirect burden shifting method of proof in an employment discrimination case. She may present direct evidence of the discriminatory or retaliatory motivation for the employment decision. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 17 (7th Cir.1987) overruled on other grounds *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834, 836 (7th Cir. 1988) (overruling jury instruction given to determine a willful violation of the ADEA). The proximity in time of the filing of charges and the discharge, and the animosity demonstrated by Hoth to Gillespie after the filing of charges is sufficient direct evidence of the employer's intent to retaliate. Therefore, the indirect method of proving this issue need not be followed. Additionally, I find more than sufficient evidence to support the jury's conclusion on the issue of retaliatory discharge.

Although approximately three months passed between Gillespie's charge with the EEOC and her termination, I find that the evidence clearly demonstrates a correlation between the two occurrences. She testified that her supervisor's treated her differently, that one of her co-employees tried, in Gillespie's mind, to trick her into violating company rules by stealing money, and that she was fired for a frivolous reason. Testimony was presented that Hoth was furious with Gillespie for the filing of the EEOC charges. After one EEOC fact finding conference in September 1983, he stated that he did not want to pay Gillespie for that day. Gillespie also was given a performance evaluation in August which was approximately one month earlier than usual and immediately after the bank learned of the September fact finding conference. This evaluation was arguably less favorable than previous reviews, notwithstanding Miller's recommendation of a pay raise for Gillespie. Finally, Gillespie testified that another bank employee told her he knew of job openings at other institutions in an apparent effort to induce her to quit.

The bank's proffered reason for terminating Gillespie was her alleged insubordination. The facts of October 12 are important in this regard. Gillespie was working at her usual teller window when a non-customer attempted to cash a check. Consistent with bank policy Gillespie called Miller over to approve the transaction. Miller at first did not hear Gillespie, but did eventually respond. Miller refused to approve the transaction because the customer's drivers license had expired. After Miller returned to her desk, the customer stated that he thought Miller was unprofessional. Later Gillespie repeated this remark to Miller in the presence of other bank employees. Miller thought this action was improper on Gillespie's part, and she wrote up a report on Gillespie's behavior.

The next day Gillespie was called into a meeting with Hoth and Miller shortly after 5:00 P.M., and was presented with the report on her conduct filed by Miller. Hoth maintains that he asked Gillespie to read the report which she refused to do. Miller corroborates this testimony. The two also claim that Gillespie refused to have the report read to her. At that point Hoth told her she was discharged. Gillespie's testimony was that she was not asked to read the report, that they did not offer to read it to her, and that she tried to explain that she was just repeating what the customer said. She then testified that Hoth said he was "sick of her shit" and that she was fired.

In support of its view of the facts the bank offered the testimony of another employee who worked that night. In addition, the bank tried to impeach both Gillespie and her witnesses with testimony previously given in a worker's compensation hearing. However, the jury was free to reject the bank's version and find that Gillespie was more credible than the other witness-

es. In ruling on a motion for a JNOV the court should not reweigh the credibility of the witnesses. *Graefenhain*, 827 F.2d at 15. Therefore, I find no basis to disturb the jury verdict on this issue.

Defendant also challenges the jury instruction given in connection with the retaliation claim. The instruction which the defendant finds objectionable reads in relevant part:

> To prove this claim, plaintiff must prove by a preponderance of the evidence that defendant took action against plaintiff for filing these charges. Plaintiff does not have to prove that retaliation was the defendant's only motive, but she must prove that the defendant intentionally acted at least in part to retaliate. . . .

Indeed, this instruction is very similar to the instruction given on the denials of lateral transfers and promotion which I have found did not correctly instruct the jury on those issues. However, the issue here was whether the jury accepted insubordination as the bank's reason for Gillespie's discharge, or the retaliation theory propounded by plaintiffs. The evidence in this regard was overwhelming that in fact the bank did take adverse action against Gillespie shortly after she filed charges with the EEOC. The bank either fired Gillespie because she was insubordinate, or in retaliation for having filed the EEOC charges. The jury chose to accept the latter. In the context of the state of the evidence presented in this case, it was an either/or proposition which I find not to be the "but for" cause requirement.

## PUNITIVE DAMAGES

The jury awarded Gillespie $100,000 in punitive damages for the discriminatory conduct. Defendant challenges the punitive damage award on the grounds that it is clearly excessive and not supported by the greater weight of the evidence.

■ I agree that the punitive damage award is either excessive or unsupported by the evidence in light of my finding that there is insufficient evidence to support a finding of discriminatory failure to promote. An award of punitive damages to punish a wrongdoer for outrageous conduct and to deter others from that same conduct must be supported by the record and not constitute a windfall to the plaintiff. *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1314 (7th Cir.1985) (*citing McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir.1984)). The court may reverse an award of punitive damages if it is merely a windfall to a plaintiff. *Id.*

The jury was not asked to distinguish in the award of punitive damages what amount was attributable to the promotion or the discharge. There is a correlation between the three awards, however, which I find will permit an appropriate award and at the same time avoid a windfall to Gillespie.

■ The jury awarded $20,000 for the failure to promote, $30,000 for the unlawful discharge, and $100,000 in punitive damages. The punitive damage award is double the amount awarded on the other two questions when added together. It follows that the jury determined punitive damages to be twice the award for compensatory damages on each issue. However, the record does not support an award of punitives for the failure to promote, just as it did not support a finding of liability on that issue. Therefore, I will offer Gillespie the option of taking a remittitur for punitive damages in an amount of $60,000, which represents twice the amount awarded by the jury on the discharge issue. In the event Gillespie declines the remittitur, I will grant defendant's motion for a new trial on this issue.

## MOTION TO DISMISS

The court deferred consideration of defendants motion to dismiss the Title VII claim, filed pursuant to Fed.R.Civ.P. 41(b) and took under advisement plaintiffs' case under Title VII. Defendant alleges that the evidence is insufficient to support a judgment on the Title VII. For the reasons stated below the motion will be denied in part and granted in part.

The jury returned a verdict finding that the defendant, through its officers, Mr. Ho-

ward Hoth or Ms. Laurie Miller, discriminated against Ms. Gillespie in denying her a position as assistant teller supervisor. The jury also returned a verdict finding that the same two employees terminated Gillespie either for discriminatory reasons or in retaliation for her filing her EEOC charge of discrimination over the denial of the promotion and other lateral transfers. The jury's resolution of the factual issues which are common to both the § 1981 and Title VII claims is binding on the court in resolving the Title VII claim. *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1293 (7th Cir.1987). However, when a court determines that there was insufficient evidence to support the jury's verdict on an issue, the court need not be bound by the jury's finding on that issue. *Cf. Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 n. 4 (4th Cir.1989) ("Although deference must be paid to to the jury's role as the finder of fact, it is always incumbent upon a trial court to follow its view of the clear weight of the evidence.")

A. Findings of Fact.

Pursuant to Fed.R.Civ.P. 52(a), I must make specific findings of fact on the Title VII claim. The statement of facts recited above is incorporated herein by reference as my findings of fact in this matter. I add that I find that the bank has stated legitimate, non-discriminatory reasons for its decision to promote Michalovitz instead of Gillespie to the assistant teller supervisor position. These reasons included Michalovitz's greater seniority, her greater enthusiasm for her job and her employer, and her improved service record in balancing, use of the phone, and timeliness in reporting to work. Plaintiffs have failed to establish that these reasons were pretextual.

I also find that plaintiffs have proved that Gillespie was discharged as a result of her filing discrimination charges with the EEOC. Her supervisors treated her differently after the filing; they desired to not pay her for time lawfully taken to assist in fact finding hearings, while at no time objecting to or suggesting that other employees not be paid; and they sought to encourage Gillespie to find another job.

Gillespie's damages for back pay from time of her discharge to time of trial are $28,936.92. This is evidenced by the stipulations of the parties submitted before trial and Exhibits 63 and 67. Gillespie has sought other employment and attempted to mitigate her damages.

B. Conclusions of Law.

■ Defendant First Interstate is an employer within the meaning of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and is liable for the discriminatory acts of the predecessor company, Continental. Plaintiffs have met their burden of establishing a *prima facie* case of employment discrimination on both the failure to promote and the termination in employment issues. Defendant has proffered legitimate non-discriminatory reasons for its decisions.

The burden of rebutting the bank's evidence and proving pretext remains with the plaintiffs for they failed to provide any direct evidence of a mixed motive on the part of the employer in making the decisions. *Price Waterhouse v. Hopkins,* ——— U.S. ———, ———, 109 S.Ct. 1775, 1787, 104 L.Ed.2d 268 (1989). Plaintiffs have failed to meet their burden of proving by a preponderance of evidence that the bank's proffered reasons for denying Gillespie the promotion in May 1983 was not in fact true and non-pretextual. Michalovitz had more seniority than Gillespie, and had significantly improved her performance over the two years immediately preceding May 1983. She also displayed much greater enthusiasm and initiative in carrying out her job than did Gillespie. The bank's decision to break from the traditional progression from one position to the next supports an inference of pretext, but is not sufficient to support such a finding.

However, I conclude that the bank did terminate Gillespie in October 1983 in retaliation for her filing of discrimination charges. This was the jury's conclusion on this issue and is amply supported by the evidence. As such, I am bound by the jury's verdict.

As noted in the findings of fact, plaintiffs have established that Gillespie's net loss of back pay is $28,936.92. In addition to this amount, plaintiffs request an award of prejudgment interest. An award of prejudgment interest is a part of the full compensation in many cases, particularly civil rights cases. *Williamson v. Handy Button Machine Co.*, 817 F.2d at 1297; *Hunter v. Allis–Chalmers Corp., Engine Division*, 797 F.2d 1417, 1426 (7th Cir.1986). However, prejudgment interest may be inappropriate in some cases— where there is a substantial, unexplained delay in filing suit or if the amount of backpay is not readily determinable. *Handy Button*, 817 F.2d at 1298.

Prejudgment interest is available only on the back pay award, not on other items of compensatory damages. *Hunter*, 797 F.2d at 1425. Gillespie was awarded $30,000 for compensatory damages for her discharge. The jury was instructed that compensatory damages included financial losses, pain, suffering and physical and emotional distress, *including back pay*. Although Gillespie testified that she was emotionally distraught as a result of the defendant's conduct, the record does not support the conclusion that the entirety of the jury award represents non-back pay damages. It is therefore safe to assume that the jury included as part of the compensatory damages some amount of back pay.

In *Handy Button* the jury awarded $130,000 for lost past and future earnings. The district judge had previously found no liability under Title VII, but refused to disturb the jury verdict on the § 1981 claim. The court of appeals was faced with the issue of how to apportion the jury award between past wages (for which prejudgment interest would be allowed) and future lost wages. Although the circumstances are different in this case, the methods of apportioning outlined by *Handy Button* can be of use here to determine the amount of back pay that should be awarded on the Title VII claim. I have determined that First Interstate is liable under Title VII for Gillespie's discharge. I now must determine what amount in addition to the verdict amount should be awarded for back pay.

Four methods of apportioning the award were discussed in *Handy Button*. 817 F.2d at 1298. The first was to deny prejudgment interest for the amount was not readily determinable. That is not proper here for amount of back pay is readily determinable. The second and third methods were mirror images of each other. The court could either treat the amount of back pay sought as the amount the jury awarded, with the balance for other damages, or treat the award as part of the damages sought by plaintiff for non-back pay injuries. Finally, the court could divide the amount of back pay sought ($28,936.92) by the amount of the total award Gillespie requested ($100,000), which would provide a quotient of approximate 0.29. Twenty-nine percent of the $30,000 award is approximately $8,700, which would represent the amount of the verdict award which should be allotted to back pay.

Of the four methods, the court found the fourth method to be "the most likely to be accurate over the run of cases...." The decision over which method to use lies within the discretion of the trial judge. 817 F.2d at 1298. I find that the fourth method is the most equitable to all parties in this case and that the sum of $8,700 represents that portion of the jury verdict which should be apportioned to back pay. Consequently, Gillespie is entitled to an award of $20,236.92 for back pay in addition to the jury award, with prejudgment interest at a rate determined by the IRS, compounded annually, on the amount of $28,936.92. *See Handy Button*, 817 F.2d at 1299 ("Each year's pay requires a different amount of interest.") *But see Hunter v. Westinghouse Electric Corp.*, 576 F.Supp. 704 (S.D.Ohio 1983) (Prejudgment interest at a rate of 8%).

The total yearly amount of Gillespie's net lost back pay is not readily discernible from the record. To facilitate entry of judgment in this case, plaintiffs should submit to the court the amount per year which Gillespie lost as a result of the discrimination, and the prevailing interest rate for those years

as used by the IRS. The plaintiffs should submit this within twenty (20) days of receipt of this decision.

Plaintiffs also request reinstatement for Gillespie. Reinstatement is an equitable remedy which is available in a Title VII case to make the plaintiff whole for the discrimination she suffered. 42 U.S.C. § 2000e–5(g). In this case I find reinstatement would be inappropriate. Plaintiff has been awarded a substantial sum of money for both compensatory and punitive damages. I find that this award adequately places plaintiff in as good or better position than if the discrimination had never occurred.

The EEOC also requests that the court issue an order requiring that the defendant post a copy of this order finding a violation of federal law. I find this to be a reasonable request which will serve as a method of deterring others from engaging in this conduct in the future.

### ORDER

Accordingly,

IT IS ORDERED that defendant's motions for directed verdict and to vacate or set aside the verdict be and the same are hereby DENIED; and,

IT IS FURTHERED ORDERED that defendant's motion for judgment notwithstanding the verdict be and the same is hereby GRANTED in part and DENIED in part; and,

IT IS FURTHER ORDERED that defendant's motion for a new trial be and the same is hereby GRANTED solely on the issue of punitive damages unless plaintiff accepts a remittitur in the amount of $60,-000 within 30 days of the date this order; and,

IT IS FURTHER ORDERED that defendant's motion to dismiss be and the same is hereby GRANTED in part and DENIED in part. Plaintiff's Title VII claim relating to the failure to promote is hereby DISMISSED. Judgment will be entered in favor of plaintiffs on the issue of retaliatory or discriminatory discharge. Plaintiff will recover the sum of $20,236.92 plus prejudg-

ment interest to be determined in accord with this opinion, all on the Title VII claim; and,

IT IS FURTHER ORDERED that defendant must post a copy of this decision in a prominent place in its establishment for a period of 90 days from the date of this order.