**Selma GEDER, Plaintiff,**

v.

**Michael P. LANE, et al., Defendants.**

**No. 87–3267.**

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 18, 1990.

Selma Geder, pro se.

Terence J. Corrigan, Asst. Atty. Gen., Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Selma Geder was an inmate at the Graham Correctional Center who refused to submit to a visual body cavity search required by the correctional center officials to maintain institutional security. Because he refused to voluntarily submit, the search was executed forcibly.

Geder, unhappy about being forced to submit, brought suit against the involved prison officials under 42 U.S.C. § 1983. A jury trial took place on July 5 and 6, 1990; the jury was instructed, sent out to deliberate at 10:24 a.m. and took less than a half hour to decide that no constitutional violation occurred as a result of the search.

We could not agree more.

Another case similar to Geder's is pending in this Court, and we anticipate more in the future. Hopefully the views expressed here will provide advance guidance to litigants and discourage the bringing of frivolous actions of this variety to our doorstep.

Here is a summary of facts in this case. While Geder was imprisoned at the Pontiac Correctional Center in Illinois, he became involved in an altercation with a prison

guard, which resulted in attempted murder charges being filed against Geder. On October 20, 1986, Geder was taken by Graham Correctional Center staff to a court hearing on the pending attempted murder charges, and later that evening he was returned to the Graham Correctional Center. Upon his return, Plaintiff was taken to the showers and ordered to undergo a routine strip search, which included a visual body cavity search.

Geder was ordered to bend over and spread the cheeks of his buttocks to allow visual inspection of his rectum, but Geder refused, arguing that he had been handcuffed and escorted by correctional personnel the entire time he was away from the Graham facility, and therefore could not have obtained any contraband. The Graham staff persisted, and Geder squatted two or three times, but still refused to bend over and spread the cheeks of his buttocks. The correctional officers told Geder that squatting was not good enough, and he was again told several times to bend over. During this portion of the confrontation, Geder was in the shower stall, and was naked.

After continuing to refuse to comply with the correctional staff's orders, the guards involved determined that the situation required the intervention of the facility's tactical unit, which is a specially equipped group of guards, wearing jumpsuits, boots, helmets, and gloves for protection, in order to assure that the situation did not get out of hand.

A few minutes later, the "tact team" arrived, and when Geder once more refused to comply with the order to bend over, he was handcuffed and removed from the shower room to the hall, in order to provide more maneuvering space for the three-man tact team. The tact team then commenced to forcibly perform the visual body cavity search; one team member grabbed Geder's head and placed it between his legs, while the others forced him to bend at the waist and spread the cheeks of his buttocks for the visual observation by another correctional officer—one of the lieutenants. Upon conclusion of the visual body cavity search, Geder was returned to his cell, and the confrontation concluded.

■ Geder had several complaints about the situation. For one thing, he complained that only qualified medical personnel could perform the search involved. However, at issue was only a *visual* body cavity search, and not a *physical* or intrusive body cavity search, in which physical probing of body cavities is performed. Only this latter type of search requires trained medical personnel, while the former can be performed by correctional personnel. *See United States v. Talkington,* 701 F.Supp. 681, 688 (C.D.Ill.1988).

Geder also complained that the prison staff was unnecessarily rough in forcing him to comply with the visual search, and he complained that he had blood on him following the search. Each of the guards, though, testified not only that no blood was present and that only reasonable force was used, but also that because of the gloves they were wearing, the scratches Geder claims to have incurred could not have been made by the tact team.

■ Finally, Geder complained that the guards used racially abusive language while performing the search, and exposed him to ridicule from other inmates by performing the search in the hallway. The guards, however, deny having used any abusive language whatsoever, and the search was conducted in the hallway due to Geder's recalcitrance and the necessity for additional maneuvering room for the tact team.

As we noted, the jury required less than a half hour to decide that no constitutional violations had occurred in the performance of the visual body cavity search. And, indeed, that verdict could not be more correct; Geder's only evidence was his own unsubstantiated claims of excessive force and abusive language, and he was simply wrong about who could perform the visual search. There is no doubt, of course, that some force was used against Geder. But that was of his own doing.

■ The Department of Corrections has a sound and necessary policy of requiring

searches of all inmates when they return to the facility, or to secure areas within the facility, after having been outside the facility or in non-secure areas where they could have obtained contraband. The policy does not require the facility to differentiate between those inmates who are handcuffed while away from the secure areas, from those who were not; nor, for that matter, does the policy require any determination as to whether an inmate was in any other way exposed to the possibility of obtaining contraband. But the policy does not have to require such differentiation; for one thing, requiring individual determinations in each instance would be administratively burdensome, and would undoubtedly sooner or later result in a breach of security. Secondly, the policy itself is sound and prudent, given the propensity and possibility of inmates to smuggle contraband into and throughout penal institutions. In short, Geder may not like the visual intrusion, but there is nothing unconstitutional about it, and submitting peaceably would save him (and anyone else who objects to the policy) from being *forced* to comply with the policy.

Visual body cavity searches are not a phenomenon found only in Illinois penal institutions. In fact, the Supreme Court has confirmed the constitutionality of such searches under a fourth amendment challenge in *Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979). There, although the Court did "not underestimate the degree to which these searches may invade the personal privacy of inmates," nevertheless, "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates," such searches are not unreasonable. The *Bell* court recognized that such searches may not be conducted in an abusive manner, but rather "[t]he searches must be conducted in a reasonable manner," *id.* at 560, 99 S.Ct. at 1885. And so long as the searches are conducted reasonably, they may be done to assure the security of the prison facility.

Geder, and other inmates like him, understandably do not like the intrusive nature of these searches. But that is one price they pay by being incarcerated. The only way these inmates have found to challenge the searches has been to assert that the searches are conducted in an unreasonable manner. *See McKinley v. Trattles*, 732 F.2d 1320 (7th Cir.1984). And so Geder claimed. He alleged that the guards were unnecessarily rough in forcing him to undergo the search which he should have voluntarily submitted to. He had no proof of such treatment, aside from his bare word, and so his case was easily defeated.

Nevertheless, two trial days were taken up by this frivolous case, and the time of the Court, the jury, the Defendants, the attorneys, and the witnesses was utterly wasted. Geder may have been satisfied; after all, he not only earned some degree of retribution by making the Defendants answer his civil rights charges and miss two days of work, and he also was treated to two days out of his prison cell. But we are not overly concerned with this "benefit" to such plaintiffs, especially in light of the monumental waste that this sort of case engenders for the other players involved.

Trial courts, therefore, should put all future similar litigants on notice that the district courts will keep a sharp eye on these cases, and will not hesitate to enter summary judgment in the defendants' favor if no factual basis exists to support a claim that the visual body cavity search was conducted unreasonably. Where such motions are forthcoming, properly supported by affidavit and deposition testimony, where the plaintiff's word is the sole slender thread keeping his suit intact but is met with overwhelming testimony in direct contradiction, a court should not hesitate to summarily grant judgment in favor of the defendants.

This case is CLOSED.